**Matthew A. TIGHE and Laura M. Tighe, Petitioners**

v.

**Michael F. CONSEDINE, Insurance Commissioner for the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 13, 2015.

Decided July 21, 2015.

Matthew A. Tighe and Laura M. Tighe, pro se.

W. Christopher C. Doane, Department Counsel, Harrisburg, for respondent.

Michael J. Creme, Jr., Lancaster, for intervenor Donegal Mutual Insurance Company.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge P. KEVIN BROBSON.

Matthew A. Tighe and Laura M. Tighe (the Tighes) petition for review of an order of Michael F. Consedine, Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner). The Commissioner upheld a determination of the Bureau of Consumer Services, Department of Insurance (Department), which denied the Tighes' challenge to the cancellation of their homeowners insurance policy by Donegal Mutual Insurance Company (Donegal). We affirm the Commissioner's order.

The facts, as found by the Commissioner and summarized below, indicate that the Tighes were dissatisfied with their prior homeowners insurance company. The Tighes asked Nathan Stein, an agent of Burns and Burns Agency, an independent insurance agency, to provide quotes for homeowners insurance from other insurance companies. Mr. Stein went to the Tighes' home and took photographs of the home. The home has a deck that is approximately fourteen feet above ground level at some points. After observing this, Mr. Stein contacted Mr. Tighe and informed him that the deck "was going to be an issue" and that the Tighes were "going to have to put up a railing." (Notes of Testimony (N.T.) at 165.) Mr. Stein also informed Mr. Tighe that an insurance company inspector would visit the property for the purpose of evaluating insurance coverage. Mr. Tighe responded to Mr. Stein's statements by relating an incident involving the deck when Mr. Tighe picked up a running toddler, because he was afraid that she might fall off the deck. Mr. Tighe also stated that he planned to install a railing. Mr. Tighe did not indicate to Mr. Stein a date by which he intended to install the railing.

Mr. Stein proceeded to issue a policy for Donegal, which the Tighes accepted. Burns and Burns then submitted the insurance application to Donegal, which included a notation that Burns and Burns was sending or emailing photographs of the property to the underwriter. Through an unexplained mishap, Burns and Burns did not send the photographs, and, consequently, when Donegal received the application, it was unaware of the condition of the deck and issued a policy. The policy became effective on June 19, 2013. In July 2013, Donegal's inspector, Patricia Dombroski, performed an inspection of the home. She sent a report to Donegal's underwriter, including a photograph of the deck and her observation regarding the height of the deck. Donegal's underwriter then determined that the condition of the deck without a railing constituted a hazard because of the injuries that could result from a fall from the deck. On August 13, 2013—approximately fifty-five days after the policy was issued—Donegal sent an email to Burns and Burns, indicating that the agency recommend to the Tighes that they install a railing by September 13, 2013, *in order to avoid cancellation of the policy.* The Tighes requested an extension of time to install the railing, and Donegal extended the deadline to October 13, 2013. On October 14, 2013, Donegal issued the cancellation notice, noting the Tighes' failure to comply with Donegal's demand for the Tighes to install the railing. (Certified Record (C.R.) at Tab A, Ex. 1.) The notice indicated that Donegal was cancelling the Tighes' insurance because Donegal determined that "[t]here is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured." (*Id.*)

On October 25, 2013, the Tighes requested the Department to review Donegal's cancellation. (C.R. at Tab A, Ex. 1A.) On December 3, 2013, a Department consumer services investigator issued a letter to the Tighes, concluding that Donegal satisfied the requirements of what is referred to as "Act 205," the Unfair Insurance Practices Act (Act),[1] when it terminated the Tighes' insurance policy. (C.R. at Tab A, Ex. 2.) On or about December 3, 2013, the Tighes sent a letter to the Department's Bureau of Consumer Services, requesting a hearing. (C.R. at Tab A, Ex. 3.) On January 10, 2014, the Commissioner appointed a hearing officer, who conducted a hearing on February 27, 2014. (C.R. at Tab A, Ex. 6; C.R. at Tab J.) Following the submission of briefs, the hearing officer referred the matter to the Commissioner for adjudication.

On June 23, 2015, the Commissioner issued his adjudication. First, the Commissioner noted that the heart of this appeal concerns the Tighes' claim that Donegal's cancellation of their policy violated the Act, which prohibits unfair methods of competition and unfair or deceptive acts or practices. Section 5(a)(9) of the Act[2] defines such acts to include, *inter alia,* the cancellation of a homeowner insurance policy that has been in force for sixty days or more, unless the insurer determines that there has been "a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured."

The Commissioner concluded that Donegal had not violated Section 5(a)(9) of the Act. The Commissioner rejected the Tighes' argument that the continuation of the condition of the deck (without a railing) did not constitute an "increase of haz-ard." The Commissioner also found unpersuasive the Tighes' claim that they tried to cooperate with Donegal. The Commissioner noted that the first time the Tighes signaled an interest in cooperation was in their October 23, 2013 letter seeking review of the cancellation, wherein they asked the Department for time to construct a temporary railing or to switch insurance carriers. (R.R. at 406a.) The Commissioner opined that, despite this offer, the Tighes never demonstrated "any genuine intent to begin the process of building any type of railing." (*Id.*) The Commissioner noted that the Tighes had not even submitted any design for a railing by the time the hearing officer conducted the hearing. (*Id.*) Additionally, the Commissioner found significant the fact that Donegal, on January 31, 2014, offered to reinstate the policy if the Tighes installed a railing within four months (or by May 15, 2014). (*Id.* at 13.) Mr. Tighe refused the offer because he believed that Donegal's request to extend the railing to cover the entire area of the deck and access steps to be "ludicrous." (*Id.* (referencing Mr. Tighe's testimony, R.R. at 326a).)

The Commissioner also rejected the Tighes' argument that Donegal's issuance of the policy constituted a promise that it would insure the Tighes' property despite his failure to provide a date upon which he would install a railing, and, based upon that alleged promise, Donegal is estopped from cancelling the policy. The Commissioner similarly rejected the Tighes' argument that Donegal should be foreclosed from cancelling the policy because it failed to do so within sixty days. In this regard, the Commissioner concluded that the reason Donegal did not exercise its right to cancel the policy was because it sought to accommodate the Tighes by extending the

---

1. Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.1–.15.

2. 40 P.S. § 1171.5(a)(9).

deadline for the installation of the railing, and, in fact, Donegal even provided the Tighes with a second extension of time to install the railing. (R.R. at 411a.) Finally, the Commissioner rejected the Tighes' argument that the failure of the agents of Burns and Burns to send Donegal the photographs should warrant a finding that Donegal violated Section 5(a)(9) of the Act.

In this appeal,[3] the Tighes, proceeding *pro se*, present numerous arguments, which we distil and summarize as follows: (1) Donegal failed to establish and the Commissioner erred in concluding that Donegal's cancellation was proper under Section 5(a)(9) of the Act as constituting an "increase in hazard;" (2) the evidence is insufficient to support some of the Commissioner's factual findings; and (3) the Commissioner erred in concluding that the Tighes failed to demonstrate that Donegal is estopped from cancelling the policy.

Section 5(a)(9) of the Act provides, in pertinent part:

(a) "Unfair methods of competition" and "unfair or deceptive acts or practices" in the business of insurance means:

. . .

(9) Cancelling any policy of insurance covering owner-occupied private residential properties ... that has been in force for sixty days or more ... unless there is a substantial increase in hazard in the risk assumed by the company subsequent to the date the policy was issued; or *there is a substantial increase in hazards insured against by reason of willful or negligent acts or omissions by the insured.*

(Emphasis added.) As we note above, Donegal based its cancellation of the policy upon the italicized language of Section 5(a)(9) of the Act. The Tighes' primary argument is that the Commissioner misinterpreted this provision. The crux of their claim is the fact that the condition of their deck—*i.e.,* the lack of a railing on the deck, is a condition that pre-dated their request for insurance and continued beyond the sixty-day limitation period following the issuance of a policy (during which an insurer may cancel a policy by right).

The Department argues that the Tighes' arguments erroneously relate to the first basis identified in Section 5(a)(9) of the Act, which authorizes cancellation beyond the sixty-day limitation period if an insurer establishes a "substantial increase in hazard in the risk assumed by the [insurer] *subsequent* to the date the policy was issued." The Department correctly notes and asserts that Donegal based its cancellation upon the second grounds in Section 5(a)(9) of the Act, highlighted in the quoted passage above, relating to increases "in hazards insured against" arising from "willful or negligent acts or omissions by the insured." Additionally, the Department argues that, to the extent this Court has interpreted this provision of Section 5(a)(9) of the Act to require the same showing of a change in physical condition of a property as required by the first basis for cancellation, the Court's interpretation is erroneous.

The Tighes rely upon this Court's decision in *Yorktowne Mutual Insurance Company v. Insurance Department,* 662 A.2d 1164 (Pa.Cmwlth.), *appeal denied,* 543 Pa. 721, 672 A.2d 313 (1995). In *Yorktowne,* we addressed an insurer's cancellation notice sent to property owners based upon an alleged, as in this matter, "substantial

---

**3.** Our review of an adjudication of the Insurance Commissioner is limited to considering whether necessary factual findings are supported by substantial evidence, whether the Commissioner erred as a matter of law, and whether any constitutional rights were violated. 2 Pa.C.S. § 704.

increase in the hazards insured against caused by willful or negligent acts or omissions" of the owners, who had failed to repair a sidewalk on which two persons had been injured. *Yorktowne,* 662 A.2d at 1164. We agreed with the adjudicator, who concluded that the insurer had failed to establish grounds for cancellation because there was "no evidence of a change in the condition of the sidewalks after the policy went into effect and that evidence of injury claims and violations of a [municipal] code were immaterial to that issue." Relying upon and quoting our earlier decision in *J.C. Penney Casualty Insurance Company v. Department of Insurance,* 43 Pa.Cmwlth. 360, 402 A.2d 558 (1979), we noted that the term "increase in hazard" has a "peculiar ... meaning denoting an *alteration* or *change* in the condition of the property that tends to increase the risk." *Id.* at 1165 (emphasis in original). We held that "[t]he risk assumed by the insurer is not increased by the mere continuation of the conditions and uses existing at the time the policy was issued. The record in this case [*i.e., Yorktowne*] contains no evidence of a change in the condition of the sidewalk during the time the policy was in effect." *Id.* (citation omitted). We noted that the record suggested that the condition of the sidewalk existed long before the policy was effective.

We have serious misgivings regarding our holding in *Yorktowne.*[4] Nevertheless, if the facts in this case are sufficiently similar to those in *Yorktowne,* we are bound by that holding. In *Yorktowne,* the insurer issued its policy six months before it sought to cancel the policy. There apparently was no communication between the insurer and the insured (or the agent who sold the insured the policy) concerning the issues relating to the subject sidewalk that apparently existed at the time the policy was issued. Those facts are distinctly different from the facts at issue in this case, and, therefore, we do not find that our holding in *Yorktowne* controls the outcome in this case.

In this case, Mr. Tighe acknowledged that the deck needed a railing *before* Donegal issued its policy. Even though Donegal was unaware of the hazardous condition of the deck at the time the policy was issued, when it learned of the hazard *before the expiration of the sixty-day period following the issuance of the policy,* it informed the agent that it would cancel the policy unless the Tighes installed the railing within one month of the date of that email. Thus, the state of the matter at the time the policy was issued was that Mr. Tighe knew he needed to install a railing in order to be eligible for the policy with Donegal. In addition, before the lapse of the sixty-day period, Donegal advised the agent that if the Tighes did not install a railing by the deadline, the policy would be cancelled. Thereafter, the Tighes acted as if they planned to comply with Donegal's requirement, but they nonetheless failed to do so, even after Donegal provided a second month-long extension of time.

Under these circumstances, we agree with the Commissioner's findings and conclusions that the Tighes knowingly elected not to comply with Donegal's admonition that, if the Tighes did not install a railing by the deadline, the policy would be cancelled. We do not view Donegal's forbear-

---

**4.** As the Department notes, the *Yorktowne* analysis appears to rely solely on the analysis in earlier cases, such as *J.C. Penney,* interpreting the first grounds for cancellation beyond the sixty-day period contained in Section 5(a)(9) of the Act. As the Department argues, such an interpretation appears to conflict with the rule of statutory construction that courts should strive to give effect to all provisions of a statute. 1 Pa.C.S. §§ 1921(a), 1922(2).

ance, at the Tighes' request, in cancelling the policy within the sixty-day period as divesting it of the right to cancel the policy. Rather, the record demonstrates that the Tighes, by failing to comply with the directive to install within the specified time period, willfully created a change in circumstances that caused the substantial increase in hazards against which they sought to be insured.

Donegal agreed to provide insurance to the Tighes' known risk associated with the un-railed deck *only for an initial one-month period that ended September 13, 2013*. Donegal agreed to an additional one-month extension of assuming the risk associated with the hazard, but did not agree to assume the risk for a period of time past that date. Indeed, as the Commissioner found, the record indicates that the Tighes acted willfully throughout the proceedings and appear never to have intended to comply with the terms Donegal set for its assumption of the risk of the hazard associated with the Tighes' deck.

Thus, we conclude that the Commissioner did not err as a matter of law in reasoning that Donegal did not violate Section 5(a)(9) of the Act. The Tighes' continued failure to comply with the condition Donegal imposed upon the Tighes as a requirement for insurance before and after the lapse of the sixty-day cancellation period

appears to amount to intentional deception, and, thus, constituted willful conduct that increased Donegal's risk to insure the Tighes' property.[5]

The Tighes challenge the Commissioner's findings about the Tighes' intentions with regard to the installation of a railing at the time Mr. Tighe spoke with the agent and thereafter.[6] Again, we disagree. The evidence in the record provides clear support for the Commissioner's factual findings. Mr. Stein testified that he informed Mr. Tighe that "it's going to require a railing to be insured." (N.T. at 165–66.) According to Mr. Stein's testimony, after he told Mr. Tighe of the requirement, "[Mr. Tighe] said it would not be a problem." (N.T. at 167.) Also, as indicated above, before the lapse of the sixty-day cancellation period, once Donegal received the photographs and understood the actual condition of the deck, it advised the Tighes, through the agent, that in order to continue to have insurance the Tighes would have to install a railing within a one-month period.

The Tighes were informed *during* the sixty-day cancellation period that Donegal required them to install a railing and to submit photographs of the property on or before the September 13, 2013 deadline.[7] (R.R. at 119a–120a.) Before the expiration of the deadline, Mr. Tighe indicated that

---

**5.** The Tighes assert a vague hearsay challenge to the Commissioner's adjudication, appearing in this context only to suggest that the evidence showed that no railing existed before the issuance of the policy, and, thus, that no physical changes occurred for the purpose of applying Section 5(9)(a) of the Act. Because no one disputes that fact, this hearsay contention is irrelevant.

**6.** To the extent that the Tighes base any of their substantial evidence arguments on alleged hearsay, we reject that argument on several grounds. First, the Tighes never raised any hearsay objection during the hearing. Second, the Tighes do not specifically identify the hearsay testimony at issue.

Third, the Tighes do not present any legal argument supporting their hearsay claim. Based primarily upon the second and third reasons, we believe the issue is waived. *In re Tax Claim Bureau of Lehigh County*, 107 A.3d 853, 857 (Pa.Cmwlth.), *appeal denied*, 117 A.3d 299 (Pa.2015). Furthermore, any statements attributed in witnesses' testimony to Mr. Tighe are likely hearsay exceptions as "[a]n opposing Party's statement," which, under Pa.R.E. 803(25), is an exception to the rule against hearsay.

**7.** In response to a question from the hearing examiner, Mr. Tighe testified that he heard about the "recommendation" to install a railing "around the middle of August."

he was willing to install a railing, but he was not certain he could comply by the deadline, and Donegal extended the deadline to October 13, 2013. (R.R. at 120a.) According to the testimony of Mr. Stein, Mr. Tighe, upon being told of the deadline, commented to Mr. Stein that "there wasn't an adequate date to get it done because [he (Mr. Tighe),] had to have it engineered by [his wife]." (R.R. at 270a.) The fact that Mr. Tighe never committed to a particular date of completion does not alter the fact that (1) Mr. Tighe understood that Donegal only continued the insurance past the sixty-day period based upon the time frame Donegal provided and (2) Mr. Tighe knew he was not complying with the requirement. Under these circumstances, the Commissioner reasonably concluded that the Tighes' persistent refusal to comply timely with Donegal's demand for a railing (which pre-dated the expiration of the sixty-day cancellation period) is what constituted the change in the risk of hazard.

Based on the evidence of record, the Commissioner reasonably inferred that the Tighes misled both the agent and Donegal into believing that the Tighes intended to remedy the hazardous condition in the property by erecting a railing, inducing Donegal into extending the deadline to remedy the condition past the 60–day by-right cancellation window. The change in circumstance that substantially increased the hazards insured against was the willful acts or omissions of the Tighes in first misleading the agent and Donegal and second in refusing to remedy a hazardous condition on the property of which they were aware at the time the policy was issued, which they agreed to remedy as a condition of the issuance and continuation of the policy, but which they willfully chose not to remedy.

The Tighes also argue that the Commissioner erred by not addressing the Tighes' claim that conduct of the agents of Burns and Burns, and particularly, the apparent failure of the agents to send the photographs of the deck to Donegal and/or the underwriter, results in an estoppel thwarting Donegal's right to cancel the policy. The Tighes, however, do not provide sufficient argument to support their claim that *Donegal* should be held responsible for the independent agents' failures. Rather, as the Department points out, the sole question before the Commissioner related to Donegal's right to cancel the policy under Section 5(a)(9) of the Act, and, as we discussed above, any impropriety on the part of the agents is immaterial, because the primary facts in this matter indicate that the Tighes knew before the lapse of the sixty-day cancellation period that Donegal would cancel the policy if the Tighes failed to install the railing within the time period Donegal required. Additionally, as the Department points out, any failure on the part of the agents is a matter that is subject to investigation and review by the Commissioner, based upon his or her authority to review alleged violations of the Act, and such review was beyond the scope of the Commissioner's review of Donegal's cancellation of the Tighes' policy. The Tighes' claim that Donegal should be held accountable based upon their unsupported claim that the agents deliberately withheld the photos in order to gain a commission for the sale of the policy is meritless.

Accordingly, we affirm the Commissioner's order.

### ORDER

AND NOW, this 21st day of July, 2015, the order of Michael F. Consedine, Insurance Commissioner for the Commonwealth of Pennsylvania, is AFFIRMED.