Frederick Mutual Insurance Company,     :
                   Petitioner     :
                           :
        v.                   :
                           :
Pennsylvania Insurance Department     :     No. 1528 C.D. 2018
                   Respondent     :     Submitted: June 3, 2019

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COVEY                          FILED: June 21, 2019

Frederick Mutual Insurance Company (Insurer) petitions for review of the Pennsylvania Insurance Department (Department) Commissioner's (Commissioner) October 22, 2018 adjudication and order affirming the Department's Bureau of Consumer Services' (BCS) Investigative Report Order (Determination) that Insurer's cancellation of Melissa D. Fitzgerald's (Fitzgerald) Homeowner's Insurance Policy No. HOP2090001 (Policy) violated the Unfair Insurance Practices Act (Act 205).[1] Insurer presents three issues for this Court's review: (1) whether the Commissioner erred by finding that Insurer acted unreasonably; (2) whether the Commissioner erred by concluding that Fitzgerald's ordered repair constituted an impossible task; and (3) whether the hearing's presiding officer (Presiding Officer) irreparably biased the proceedings.[2] Upon review, we affirm.

---

[1] Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. §§ 1171.1-1171.15.

[2] In its Reply Brief, Insurer also claimed that the Commissioner erred by affirming this matter based on reasonableness rather than timeliness, as the BCS did in its Determination. Preliminarily, "[Insurer] waived the issue by failing to raise it in [its] petition for review. [Pennsylvania Rule of Appellate Procedure (Rule)] 1513(a)[.]" *Meguerian v. Office of the Atty. Gen.*, 86 A.3d 924, 931 (Pa. Cmwlth. 2013). "Additionally, when a party appeals, but fails to address an issue in the brief, the issue is waived." *Jimoh v. Unemployment Comp. Bd. of Review*, 902 A.2d 608, 611 (Pa. Cmwlth. 2006). Although Rule 1513(d)(5) allows this Court to address

The facts of this case are not disputed. Fitzgerald owns and resides in an attached, three-story row home in York, Pennsylvania. Her home is in a line of multiple row homes that are all connected by third-story roofs, and which are connected in pairs by second-story roofs. Fitzgerald's home is connected to her neighbor Jonathan's[3] (Neighbor) home, and they share a chimney located in the center of their joined roofs. Insurer continuously insured Fitzgerald's home from 2008 until March 23, 2018. Insurer conducted a property inspection before issuing the Policy. Sections I and II (Conditions) C.2.b(2) of the Policy authorized Insurer to cancel Fitzgerald's coverage if "[t]here has been a substantial change or increase in hazard in the risk assumed by [Insurer] subsequent to the date the [P]olicy was issued." Reproduced Record (R.R.) at 354a;[4] *see also* R.R. at 48a.

On September 11, 2017, Fitzgerald reported to Insurer that her roof was damaged by a September 5, 2017 storm. On September 13, 2017, Fitzgerald met with Insurer's claims adjuster John Elliott (Elliott) and her roofing contractor (Heidler Roofing) to inspect the damage. On September 20, 2017, Fitzgerald received a letter from Elliott, wherein he declared:

> The second floor rear rubber roof has been damaged by wind. The 3rd floor ceiling has two small spots with minor water damage. These minor leaks appear to be related to the deteriorated chimney mortar joints or roof seams. There is no wind damage to the upper 3rd floor roof.

issues not raised in the petition for review if they can be addressed based on the certified record, this Court has expressly ruled that an appellant is prohibited from raising new issues or those inadequately developed in its original brief for the first time in its reply brief. *Commonwealth v. Fahy,* 737 A.2d 214 (Pa. 1999). Notwithstanding, this Court has ruled that "nothing in the Department's Regulations or [General Rules of Administrative Practice and Procedure] makes the Commissioner bound solely by the [BCS' Determination]." *Skotnicki v. Ins. Dep't*, 146 A.3d 271, 283 (Pa. Cmwlth. 2016), *aff'd*, 175 A.3d 239 (Pa. 2017).

[3] Jonathan's last name is not disclosed in the record.

[4] Despite that Insurer's Reproduced Record page numbers are designated with an "A" followed by the page number, this Court will reference the Reproduced Record page numbers as Rule 2173 requires, with the number "followed . . . by a small a[.]" Pa.R.A.P. 2173.

R.R. at 369a; *see also* R.R. at 293a. By October 2, 2017 letter, Elliott notified Fitzgerald that he submitted her roof claim to Insurer. On October 6, 2017, Insurer paid Fitzgerald the first installment on her roof claim. On October 20, 2017, Fitzgerald had the roof repairs made. On October 23, 2017, after receiving the completion certificate, Insurer made the final payment on Fitzgerald's roof claim.

By December 21, 2017 letter, Insurer requested that Fitzgerald provide documentation that the "deteriorated mortar joints on the chimney [had] been repaired." R.R. at 380a. The letter notified Fitzgerald that if repairs had not yet been made, they must be completed by March 22, 2018 "in order to maintain both the integrity of [her] home and [her] insurance coverage," and her "[f]ailure to provide the mandatory documentation by the specified date would result in direct notice of cancellation or nonrenewal" of her Policy.[5] R.R. at 380a. Fitzgerald put the letter aside until the weather broke and she could have the repairs made. *See* R.R. at 94a, 127a, 152a-153a, 243a. In the meantime, she discussed the chimney with Neighbor, who mentioned he had the chimney examined and had been informed that no repairs were necessary; Fitzgerald had no indication at that time that Neighbor would oppose the repairs, since Fitzgerald was paying for the job. *See* R.R. at 127a, 152a-153a, 248a-249a, 251a, 272a-273a.

In February 2018, because Heidler Roofing had no available appointments, Fitzgerald contacted York Home Performance (YHP), which visited her home on February 29, 2018 to conduct an energy efficiency assessment and inspect the chimney and provide an estimate. YHP determined that the chimney did not need to be fixed; however, Fitzgerald scheduled YHP to return on March 12, 2018 to make the Insurer-mandated repairs. *See* R.R. at 101a, 108a, 257a, 268a-270a, 316a. Both YHP and Fitzgerald understood from Insurer's December 21, 2017 letter

_____

[5] Fitzgerald was aware that Insurer did not cover the chimney repair costs. *See* R.R. at 93a, 104a.

that the entire chimney had to be repaired. *See* R.R. at 103a-104a, 109a, 152a. When the contractor returned on March 12, 2018, Neighbor refused to allow the contractor to enter his property or repair his portion of the chimney, because he did not believe the work was necessary.[6] *See* R.R. at 105a-109a, 127a, 248a-251a, 274a-275a.

While YHP was still on the premises on March 12, 2018, Fitzgerald contacted Insurer and inquired of three different underwriters how she should proceed under the circumstances. *See* R.R. at 106a-110a, 122a-123a, 125a, 381a. The last of the underwriters referred Fitzgerald to Insurer's Claims Supervisor Brian Culp (Culp), who informed her that he understood that the entire chimney had to be repaired, but he would discuss the matter with the underwriting department and someone would get back to her. *See* R.R. at 111a-113a, 220a-221a, 254a-255a, 383a. While Fitzgerald was on the phone with Insurer, YHP left her home without doing the chimney repairs. *See* R.R. at 254a.

When Fitzgerald did not hear from Insurer, she called Culp on March 14, 2018 and he reiterated that the entire chimney had to be repaired. *See* R.R. at 115a-119a, 221a-222a, 291a, 383a. Culp notified Fitzgerald that her only recourse was to file a complaint with the Department, which she did. *See* R.R. at 120a, 122a, 383a. On or about March 15, 2018, YHP informed Fitzgerald that it was not available until

---

[6] Insurer's underwriter's notes reflect that Fitzgerald stated during the March 12, 2018 visit that Neighbor did not have the funds to repair his portion of the chimney. *See* R.R. at 108a, 381a. However, Fitzgerald clarified that the Neighbor's problem was with access, not funding. *See* R.R. at 109a, 125a-126a, 388a. Fitzgerald could not explain why the underwriter's notes would reflect Neighbor's objection was money-based.

April 27, 2018.[7]  *See* R.R. at 143a-145a.  On March 19, 2018, Fitzgerald filed her complaint with the Department.[8]  *See* R.R. at 121a-122a, 384a-389a.

By March 22, 2018, 6:03 p.m., email to Culp, Fitzgerald stated:

The past 3 days have been rain, wind, snow therefore repairs could not be done to meet your deadline o[f] March 22 for chimney repair.  [YHP] is willing to submit a letter to state [Fitzgerald] retained him for the repair but due to weather cannot proceed.  Information requested by [Insurer] on how to gain access to another's person property without [his/her] permission has not been addressed.  The email [Insurer] sent does not address that issue either.  The email also does not address the request for an extension due to weather over the past month . . . .  Are we to wait [for] the decision from the [Department] on my request for review of the entire claim?

Please provide updates to the above concerns, along with current status of my [Policy].

R.R. at 390a.  On March 23, 2018, at 2:56 p.m., Culp responded that her email was forwarded to the underwriting department for response.  *See* R.R. at 390a.

Insurer issued a Notice of Cancellation to Fitzgerald on March 23, 2018, which reflected that the "POLICY WILL NO LONGER BE IN FORCE ON 5/25/18," because

[Insurer] considers the deteriorated mortar joints on the chimney to be a change in physical condition which results in an increase in hazard insured against [and] which, if present and know [sic] to [Insurer] prior to the issuance of the [P]olicy, [Insurer] would not have issued the [P]olicy.  It is therefore no longer eligible for coverage [and] this [P]olicy must be cancelled.

---

[7] Fitzgerald claims that some time between March 12 and March 15, 2018, she notified Insurer by email and facsimile transmittal to "helpdesk@frederickmutual.com or something like that" that YHP would conduct the chimney repairs on April 27, 2018.  R.R. at 258a; *see also* R.R. at 271a, 277a-279a, 317a.  However, she could not confirm they were sent.  *See* R.R. at 258a.

[8] Fitzgerald initiated the complaint on March 14, 2018 and filed it on March 19, 2018.  The complaint raised two claims.  Only the chimney claim is at issue in this appeal.

5

R.R. at 391a.  Insurer afforded Fitzgerald 60 days to obtain new coverage.  *See* R.R. at 391.

On April 12, 2018, BCS issued its Determination, wherein it concluded that "[Insurer], by its action, is in violation of Act 205.  Specifically: An insurer must give the insured adequate time to correct a problem causing an increase in hazard." R.R. at 396a (emphasis omitted).  BCS directed Insurer to "continue the [P]olicy with no lapse in coverage."[9]  R.R. at 396a.

On April 23, 2018, Insurer appealed from BCS' Determination and requested a hearing.  *See* R.R. at 398a-406a.  On April 27, 2018, YHP made the chimney repairs, but because Neighbor refused YHP access to his portion of the chimney, YHP repaired only Fitzgerald's side.[10]  *See* R.R. at 109a-110a, 145a-147a, 255a.

A hearing was conducted before the Presiding Officer on July 10, 2018, at which Fitzgerald appeared pro se.  *See* R.R. at 22a-311a.  On October 22, 2018, the Commissioner upheld BCS' April 12, 2018 Determination, reasoning:

> [Insurer] gave [Fitzgerald] a reasonable amount of time to repair her chimney.  However, it required [Fitzgerald] to complete the impossible task of repairing an entire chimney when it was co-shared by [Neighbor] who refused [YHP] access to his portion of the chimney.  [Fitzgerald] communicated this dilemma to [Insurer] on March 12, more than a week before the deadline.  On that date, she was willing to do her part in meeting [Insurer's] requirement that she repair her chimney and had [YHP] standing by to perform the work.  With this communication to [Insurer], [Fitzgerald] placed the ball squarely in [Insurer's] court. [Insurer] could have agreed to permit [YHP] to do the work on her portion of the chimney.  Instead of agreeing to this

---

[9] Fitzgerald's Policy is still in effect.  *See* R.R. at 139a.

[10] Fitzgerald clarified that YHP's repair "overlapped somewhat" on Neighbor's half of the chimney.  R.R. at 145a; *see also* R.R. at 284a.  "[YHP] [] did some other planing to make sure that any water wouldn't roll to the other side, but if you visually looked at it, it's [Fitzgerald's] portion of the chimney."  R.R. at 146a; *see also* R.R. at 256a, 283a-284a.

solution, [Insurer] insisted on the impossible task of repairing the entire chimney. During [Fitzgerald's] efforts to communicate with [Insurer], [YHP] left the premises.

Under these circumstances, [Insurer] has not met its burden of establishing that [Fitzgerald's] actions caused an increase in hazard. To the contrary, she was trying her best to comply with [Insurer's] recommendation. She was neither willfully ignoring [Insurer's] recommendations nor acting negligently.

. . . .

[Insurer's] initial request was unreasonable. Additionally, it did not respond reasonably to [Fitzgerald] on March 12. At that time she was prepared to complete the repairs, even on [Neighbor's] share of the chimney, well within the March 22 deadline. When it became evident that [Neighbor] made such efforts impossible, she acted reasonably in contacting [Insurer] to seek guidance. Instead of providing a solution to [Fitzgerald], [Insurer's] employees continued to insist that the entire chimney be repaired. Requiring an insured to complete an impossible task is not a reasonable request.

Accordingly, the Commissioner finds that [Insurer's] cancellation of [the Policy] violated Act 205, albeit on grounds other than that on which [BCS] found such violation.

R.R. at 13a-15a (record citation omitted). Insurer appealed to this Court.[11]

Initially, Act 205 prohibits persons in the insurance business from engaging in unfair or deceptive insurance practices. *Nationwide Mut. Fire Ins. Co. v. Ins. Dep't*, 4 A.3d 231 (Pa. Cmwlth. 2010). Section 5(a)(9) of Act 205 defines "unfair or deceptive acts or practices" to include, in relevant part:

---

[11] This Court's review of the Commissioner's adjudication and order is limited to determining whether an error of law was committed, constitutional rights were violated or necessary factual findings are supported by substantial evidence. *Donegal Mut. Ins. Co. v. Ins. Dep't*, 719 A.2d 825 (Pa. Cmwlth. 1998). "To the extent the Commissioner's findings represent credibility determinations, they are not reviewable on appeal as a matter of administrative law." *Nationwide Mut. Fire Ins. Co. v. Ins. Dep't*, 4 A.3d 231, 234 n.3 (Pa. Cmwlth. 2010).

> Cancelling any policy of insurance covering owner-occupied private residential properties . . . that has been in force for sixty days or more . . . unless . . . there has been **a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued**[.]

40 P.S. § 1171.5(a)(9) (emphasis added). "[T]he phrase 'increase in hazard' has a peculiar and appropriate meaning denoting an *alteration* or *change* in the condition of the property that tends to increase the risk." *Yorktowne Mut. Ins. Co. v. Ins. Dep't*, 662 A.2d 1164, 1165 (Pa. Cmwlth. 1995). "The insurer has the burden of proving compliance with the statutory requirements for cancellation of a homeowner['s] policy of insurance." *Nationwide*, 4 A.3d at 234.

Insurer argues that the Commissioner erred by finding that Insurer acted unreasonably. Insurer specifically asserts that the Commissioner's decision should be overturned because "there is very little that [Insurer] could have done to rectify the situation with Fitzgerald." Insurer Br. at 7. Insurer claims that it acted reasonably since it was not informed of Neighbor's objection until March 12, 2018, it had only "two days" before Fitzgerald filed her complaint, and "there was no further communication from Fitzgerald until the night of March 22, *after* the 90-day deadline expired." Insurer Br. at 7-8.

At the July 10, 2018 hearing, Fitzgerald testified that her first notice that her chimney was a problem was when she received Insurer's December 21, 2017 letter.[12] *See* R.R. at 252a, 295a. Fitzgerald explained that her delay in having the chimney repaired was due to both the weather conditions and Insurer's failure to guide her on what to do about her Neighbor's refusal to allow repairs to his portion of the chimney. *See* R.R. at 129a-133a, 144a-145a, 253a. She described that weather

---

[12] Fitzgerald interpreted Elliott's use of the word "appeared" to mean only that there was a possibility that the chimney mortar was causing a problem. R.R. at 369a; s*ee also* R.R. at 59a, 293a, 295a.

8

conditions – rain, wind, ice and snow – prevented her from obtaining an estimate before the end of February 2018 because it was not safe for anyone to be on the rubber roof. *See* R.R. at 153a-154a, 243a.

Fitzgerald stated that she ultimately had her half of the chimney repaired on April 27, 2018 so that "at least [her] part was done." R.R. at 149a. Fitzgerald asserted that she did "what [she] could . . . to comply with what [was] being requested of [her] and not cause any further damage to her property." R.R. at 147a. When asked "what was stopping [her] from doing that before March 22nd, 2018[,]" Fitzgerald responded: "Because [Insurer] wouldn't accept it," R.R. at 147a, "underwriting kept saying they would not accept a partial repair. . . . [t]hey would still cancel the [P]olicy." R.R. at 146a.

Fitzgerald acknowledged that her only request to Insurer for an extension from the Policy cancellation deadline was her March 22, 2018 email. S*ee* R.R. at 132a-133a, 254a. However, she articulated:

> PRESIDING OFFICER: . . . [] Fitzgerald, during that conversation that you had on March 14, did [] Culp explain to you why you had to have the whole chimney done, even though half of it was not even on your [P]roperty?
>
> [FITZGERALD]: No one has ever answered that question for me.
>
> PRESIDING OFFICER: Did you ask the question?
>
> [FITZGERALD]: They said it['s] our understanding of the underwriters, all three of them, all the way up to supervision - .
>
> PRESIDING OFFICER: Did you ask them?
>
> [FITZGERALD]: I asked them that specifically, yes.
>
> PRESIDING OFFICER: Why the whole chimney -?
>
> [FITZGERALD]: And their response was you accepted the burden of purchasing an adjoined property. My response

9

was, well, you insured that [] adjoined property and I'm asking for assistance to do what you've asked me to do. I can't force another property owner to let me onto [his/her] property nor touch [his/her] stuff. Please help me. And I always just got, do it or we're moving forward.

R.R. at 119a-120a. She pronounced: "I believe I did everything I could to instill upon the people that make[] the decisions [at Insurer] that I needed help." R.R. at 149a. Fitzgerald recounted that she did not call the underwriting department again after Culp informed her that her issue was for that department, because underwriting had already referred her to Culp, and she did not think there would be any further benefit. *See* R.R. at 254a-255a, 290a.

When Fitzgerald was asked if she thought it was reasonable to wait until 81 days into her 90-day deadline to embark on the repairs, Fitzgerald declared that she did not contact Insurer before March 12, 2018 because the repairs were scheduled for that date, YHP was there and ready to proceed, and the work would have been completed well within her 90-day deadline. *See* R.R. at 149a-151a, 299a.

Insurer's Regional Vice President Jill Showalter (Showalter), who oversees Insurer's underwriting department, testified that, after Insurer becomes aware of a change in a home's condition sufficient to be a hazard, it notifies the homeowner about repairs necessary to continue his/her policy and "typically give[s] a 90-day timeframe as [it] believe[s] that [] is adequate time for most repairs to be made." R.R. at 162a; *see also* R.R. at 161a. She explained that, although Insurer does not take weather into account when issuing a 90-day notice, "[i]f there is an issue with completing the repair within that 90 days, if we're asked for an extension, we would grant an extension." R.R. at 164a; *see also* R.R. at 163a, 165a-167a.

Showalter stated that Fitzgerald was sent the 90-day notice after underwriting received notification that her home showed minor leaks that were new[13]

---

[13] Showalter described that new hazards refer to either newly created or newly identified hazards. *See* R.R. at 179a-180a, 188a.

10

since the Policy was issued, and Elliott related them to the chimney's deteriorated mortar joints or roof seam. *See* R.R. at 173a-175a. Showalter speculated based on her recollection of weather conditions in December 2017 and January and February 2018, Insurer would have granted Fitzgerald a deadline extension if she had asked for one, as long as she could show a good faith effort to have the repairs made. *See* R.R. at 176a-177a. However, she represented that Fitzgerald only contacted underwriting on March 12, and there was no underwriting record that Fitzgerald requested an extension. *See* R.R. at 180a-181a, 212a-213a.

Showalter did not recall seeing Fitzgerald's March 22, 2018, 6:03 p.m., email to Culp, and did not think her staff did before the cancellation was issued, since most left the office between 4:30 and 5:00 p.m. that day. *See* R.R. at 181a, 197a, 202a-203a. She agreed that, although there was no specific extension request, the underwriter's March 12, 2018 summary of Fitzgerald's concerns could be interpreted as she was having trouble complying with Insurer's repair mandate. *See* R.R. at 191a, 194a, 201a. Showalter admitted Fitzgerald was not told that she could have submitted information from Neighbor that repairs to his half of the chimney were not necessary. *See* R.R. at 208a-211a.

Showalter explained that the Policy cancellation notice was issued because "[Insurer] . . . [was] not contacted and advised that the repairs had been completed, nor that they were scheduled to be completed." R.R. at 183a. Showalter clarified that, although the cancellation notice afforded Fitzgerald an additional 60 days to obtain new coverage, and the cancellation could have been rescinded if she proved the repairs were made by March 22, 2018, it was not an extension of time for Fitzgerald to make the repairs. *See* R.R. at 186a-187a.

Culp testified for Insurer that, when Fitzgerald was transferred to him on March 12, 2018, and inquired whether she had to repair the entire chimney, he told her that is how he read Insurer's requirement. *See* R.R. at 219a. He further

11

explained, however, that it was an underwriting issue. *See* R.R. at 219a. He informed her that he would discuss the matter with underwriting and someone would get back to her. *See* R.R. at 220a-221a. Culp discussed the matter with underwriting "and left it at that." R.R. at 221a. Culp confirmed that Fitzgerald called him again on March 14, 2018 after she had not heard back from Insurer, he told her that there was nothing he could do because her problem was not a claim issue, and he directed her back to underwriting. *See* R.R. at 220a-222a, 225a-226a. Culp described that, during the March 12, 2018 exchange, Fitzgerald stated that Neighbor did not have the money for the repairs but, during the March 14, 2018 conversation, claimed that Neighbor refused YHP access. *See* R.R. at 219a-222a, 232a. Culp recalled receiving Fitzgerald's March 22, 2018 email on March 23, 2018, forwarding it to the underwriting department and notifying Fitzgerald that he did so. *See* R.R. at 226a.

The record evidence belies Insurer's claim that "there is very little [it] could have done to rectify the situation with Fitzgerald." Insurer Br. at 7. It is clear, based on the undisputed record evidence, that Fitzgerald attempted to comply with Insurer's December 21, 2017 directive but could not do so after Neighbor intervened.[14] Whether Neighbor declined to have his portion of the chimney repaired because he did not have the money or he did not think it was necessary is irrelevant. In either case, Neighbor prevented Fitzgerald from fulfilling her obligation. As soon as Fitzgerald became aware of Neighbor's objection, she contacted Insurer and asked what she should do.

---

[14] Insurer cites to *Tighe v. Consedine*, 121 A.3d 569 (Pa. Cmwlth. 2015), to support its position that it reasonably cancelled the Policy. Insurer asserts: "Just as in *Tighe*, Fitzgerald was fully aware of the requirement that she repair the roof [sic] to maintain her insurance, and she willfully failed to do so." Insurer Br. at 6. However, in *Tighe*, "the [homeowners] never demonstrated 'any genuine intent to begin the process of building any type of railing[,]'" but, rather, knowingly elected to not comply with the insurer's directive to install a railing or face cancellation. *Id.* at 571. Because Fitzgerald clearly did what she could to preserve her insurance coverage, *Tighe* is inapposite here.

12

Rather than instructing Fitzgerald on how she should proceed under her circumstances (perhaps, by repairing only her half of the chimney), or offering her an extension in which to work it out, Insurer's employees told her this was the risk she took by buying an adjoined home,[15] and then Insurer's underwriting and claims departments bounced her back and forth. When Fitzgerald realized Insurer was not going to help her, she filed the complaint with the Department, and sent the March 22, 2018 email to Culp – Insurer's employee with whom she had her last contact.

Despite that the March 22, 2018 email was sent at 6:03 p.m., which may have been after Insurer's staff left, Insurer's December 21, 2017 letter does not specify whether her deadline was the close of business (whenever that was), or the end of the calendar day at midnight.[16] Regardless, the only instruction Insurer ever gave Fitzgerald was to repair the entire chimney or her Policy would be cancelled. Accordingly, the Commissioner properly concluded that Insurer acted unreasonably under the circumstances.

Insurer further contends that the Commissioner erred by concluding that Fitzgerald's ordered chimney repair constituted an impossible task. Specifically, Insurer claims that, since the chimney repairs were made to Fitzgerald's side on April 27, 2018, the task was clearly not impossible.

However, Insurer disregards that its instruction to Fitzgerald at every turn was to repair the *entire* chimney or Insurer would cancel the Policy. Because Neighbor refused to permit repairs to his side, repairing the *entire* chimney *was* clearly impossible. Moreover, Fitzgerald's partial repairs still do not satisfy Insurer's directive. Certainly, if Insurer was willing to accept Fitzgerald's partial repairs to continue the Policy, it could and should have so informed her, and the work would

---

[15] Notably, Insurer insured the chimney under these circumstances, thereby exposing itself to potential hazards caused by or related to third-party actions or, as in this case, inactions.

[16] Insurer's cancellation notice specified that it was effective after the calendar day, *e.g.*, "12:01 A.M. (Standard Time) on 5/25/18."

have been completed on March 12, 2018.[17]  However, Insurer did not.  Therefore, from Fitzgerald's vantage point, the task was impossible.  Accordingly, the Commissioner properly concluded that Fitzgerald's ordered chimney repair constituted an impossible task.

Finally, Insurer avers that the Presiding Officer irreparably biased the proceedings by the tone and content of her questions and also gave the appearance of impropriety.  However, because Insurer failed to raise a bias objection at the hearing, the issue is waived and this Court need not address it.[18]  *See Rodgers v. Pa. State Police*, 759 A.2d 424 (Pa. Cmwlth. 2000); *see also Stouffer v. Pa. State Police*, 464 A.2d 595 (Pa. Cmwlth. 1983).

Notwithstanding, Department hearings are governed by the General Rules of Administrative Practice and Procedure (GRAPP).  *See* Section 56.1 of the Pennsylvania Code, 31 Pa. Code § 56.1.  Section 35.189 of GRAPP specifies: "It is the duty of the presiding officer to conduct a fair and impartial hearing and to maintain order."  1 Pa. Code § 35.189.  This Court has declared relative to Department hearings:

> The Pennsylvania Supreme Court has long held that 'any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.' *Vann v. Unemployment Comp. Bd. of Review*, . . . 494 A.2d 1081, 1086 ([Pa.] 1985) (quoting *Groch v. Unemployment Comp. Bd. of Review*, . . . 472 A.2d 286, 288 ([Pa. Cmwlth.] 1984)).  More recently, this Court clarified that, 'referees should reasonably assist pro se

---

[17] It is not clear from this record whether Insurer, indeed, would have accepted partial performance in satisfaction of the December 21, 2017 notice.

[18] "There is a limited exception to the waiver doctrine. Where it appears from all the circumstances that a timely objection to perceived judicial misconduct would be meaningless, a party may choose to raise the issue for the first time" on appeal.  *Dennis v. Se. Pa. Transp. Auth.*, 833 A.2d 348, 352 n.2 (Pa. Cmwlth. 2003).  Because Insurer does not allege in its brief that it would have been futile to raise the bias issue at the hearing, the limited waiver exception does not apply here.

14

parties to elicit facts that are probative for their case.'
*Hackler v. Unemployment Comp. Bd. of Review*, 24 A.3d
1112, 1115 (Pa. Cmwlth. 2011).

*Skotnicki v. Ins. Dep't*, 146 A.3d 271, 283 n.14 (Pa. Cmwlth. 2016), *aff'd*, 175 A.3d 239 (Pa. 2017).

This Court has also concluded "that where a person proceeding before an administrative agency is not represented by counsel, the hearing officer must be unusually cautious to insure that all issues are fully examined." *Zong v. Ins. Dep't*, 614 A.2d 360, 363 (Pa. Cmwlth. 1992). To that end,

> an administrative tribunal[] has the power to ask questions to clarify matters and to elicit relevant information not presented by counsel. *Dayoub v. State Dental Council* [&] *Examining B*[*d.*, 453 A.2d 751, 753 (Pa. Cmwlth. 1982)]. [It] will have overstepped its bound only when it heatedly questions and argues with [a party] and [his/her] witnesses 'in such a manner that [the presiding officer's] behavior . . . [is] much more in line with that of a prosecuting attorney than of a neutrally detached and impartial decision-maker.' [*Id.*].

*Shah v. State Bd. of Med.*, 589 A.2d 783, 797 (Pa. Cmwlth. 1991).

In the instant matter, the Presiding Officer "reasonably assist[ed] [Fitzgerald] to elicit facts that [were] probative for [her] case[,]" *Hackler*, 24 A.3d at 1115, to ensure that *both* parties had the opportunity to fully present their cases. There is no evidence that the Presiding Officer impermissibly advocated for Fitzgerald, assisted her in a manner that biased the proceedings, or gave the appearance of impropriety. Rather, it is clear from the record that the Presiding Officer was ensuring that all relevant facts were available for the Commissioner's review. Accordingly, the Presiding Officer did not irreparably bias the proceedings or give the appearance of impropriety.

For the foregoing reasons, the Commissioner's adjudication and order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frederick Mutual Insurance Company,     :
                   Petitioner      :
                                   :
                 v.                 :
                                   :
Pennsylvania Insurance Department     :       No. 1528 C.D. 2018
                   Respondent    :

## O R D E R

AND NOW, this 21st day of June, 2019, the Pennsylvania Insurance Department Commissioner's October 22, 2018 adjudication and order is affirmed.

_____
ANNE E. COVEY, Judge