**[J-76-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| GREGORY G. SKOTNICKI, | : | No. 12 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 156 CD |
| | : | 2015, dated August 17, 2016 Affirming |
| v. | : | the PA Insurance Commissioner's |
| | : | Adjudication and Order dated January |
| | : | 15, 2015 at No. P14-07-019. |
| INSURANCE DEPARTMENT, | : | |
| | : | SUBMITTED:  August 25, 2017 |
| Appellee | : | |

## OPINION

**JUSTICE BAER**                                            **DECIDED:  December 19, 2017**

Pursuant to the regulations that implement The Unfair Insurance Practices Act ("Act 205"), 40 P.S. §§ 1171.1-1171.15, an insured can appeal to the Insurance Commissioner ("Commissioner") of Appellee Pennsylvania Insurance Department ("Department") when an insurer decides to cancel or not renew the insured's homeowners' insurance policy.[1] 31 Pa.Code § 59.7.  When an insured pursues such an appeal, the Commissioner, through the Department's Bureau of Consumer Services ("Consumer Services"), initially investigates the matter and issues an investigative

---

[1] Act 205 "prohibits persons from engaging in an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 191 n.6 (Pa. 2007) (citing 40 P.S. § 1171.4). The Commissioner enforces Act 205 and "is empowered to impose administrative and civil penalties and injunctions upon insurers who violate its provisions." *Id.*  The regulations that implement Act 205 can be found at 31 Pa.Code § 59.1-59.13.  For ease of discussion, we will refer to these regulations generally as "the Regulations."

report to the parties. 31 Pa.Code § 59.7(b) & (c). The parties then can submit written comments to the Commissioner or request a formal administrative hearing. *Id.* at § 59.7(c) & (d). Ultimately, the Commissioner disposes of the appeal by entering an order. *Id.* at § 59.7(f).

This matter requires the Court to consider whether, in the context of such an appeal, an insurer is collaterally estopped from litigating issues that were previously discussed in an investigative report that Consumer Services supplied in an earlier and separate appeal involving the same parties, when the Commissioner never entered a final order in the earlier appeal. For the reasons that follow, we hold that, for purposes of the doctrine of collateral estoppel, an investigative report does not constitute a final adjudication on the merits of any issue. Accordingly, an insurer is not collaterally estopped from litigating issues in the scenario described above. Because the Commonwealth Court reached the proper result in this case, we affirm that court's order.

The background underlying this matter can be summarized as follows.[2] Appellant Gregory G. Skotnicki ("Skotnicki") owns a home which he has insured since 2003 with a policy he purchased from Phoenix Insurance Company ("Phoenix").[3] In July of 2013, Skotnicki's dog bit a neighbor. Phoenix accepted liability for the neighbor's claim and paid $42,500 in damages.

---

[2] At the outset, it is worth noting that the regulation which governs the procedure for appealing an insurer's decision to cancel or not renew a policy is rather straight-forward. In this matter, two such appeals occurred, but they did not proceed in a way that comports with the regulation. The parties' arguments, as well as the decisions of the Commissioner and Commonwealth Court, align with the appeal process that actually occurred in this case, not with the procedure contemplated by the regulation, which makes it challenging to provide a comprehensible summary of the background underlying this matter.

[3] Skotnicki has proceeded *pro se* throughout the litigation of this matter. He continues to represent himself in this appeal.

In a notice dated April 22, 2014, Phoenix informed Skotnicki that his homeowners' policy would not be renewed effective May 29, 2014. The notice explained the reason for non-renewal as follows: "There is a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was first issued, as described below: There is an animal or pet that has bitten or injured." N.T., 9/30/2014, Exhibit S1. Skotnicki appealed the non-renewal, requesting that the Commissioner review the matter pursuant to the Regulations.

On May 28, 2014, Consumer Services issued an "Investigation Report Order."[4] In the report, it found that Phoenix violated Act 205, declaring, in pertinent part, as follows:

> It is our finding that the company, by its actions, is in violation of Act 205. The consumer provides a narrative explaining how this dog bite occurred. Phoenix did not comment on the circumstances surrounding this dog bite in the response dated May 12, 2014. Our Department requested the company's narrative and details of the claim on May 21, 2014 and to date we have no record of a response.
>
> Based on the insured's narrative this appears to have been a provoked dog bite incident[.] As the company has not justifiably proven any increase in hazard, the company is directed to continue the policy with no lapse in coverage.

N.T., 9/30/2014, Exhibit S2, at 1.

The report also informed Phoenix that, if it wished to dispute the determination, then Phoenix could request a formal administrative hearing within 10 days of the issuance of the report. *Id.* at 2; *see* 31 Pa.Code § 59.7 (c) & (d) (stating that, if the insurer or insured desires a formal administrative hearing, such request shall be made

---

[4] It is unclear why Consumer Services characterized the report as an order. As previously noted, the Regulations require the Commissioner initially to respond to an insured's appeal by issuing an "investigative report," not an order. *See* 31 Pa.Code § 59.7(c) (explaining that "[u]pon completion of the investigation, a copy of the investigative report will be supplied to both the insured and the insurer"). We further observe that the investigative process is delegated to Consumer Services.

within 10 days of receipt of the investigative report). The footer on the second page of the report noted, "[B]e advised that this communication does not constitute an adjudication under the Administrative Agency Law." N.T., 9/30/2014, Exhibit S2, at 2.

Phoenix requested a formal hearing with the Commissioner, and Melinda Fisher Kaufman was appointed to act as the presiding officer. However, a hearing did not occur. Instead, on June 19, 2014, Presiding Officer Kaufman entered an "order" stating that Phoenix requested to withdraw the appeal.[5] Presiding Officer Kaufman's "order" granted that request and further noted that the matter would be marked closed and discontinued.[6] No formal order thereafter was entered by the Commissioner.

On June 18, 2014, Phoenix provided Skotnicki with a second notice, informing him that his homeowners' policy would be cancelled effective July 25, 2014 (as opposed to non-renewal of the policy, which was the gist of the initial proceedings between the parties).[7] This notice explained the reason for cancellation as follows: "There is a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was first issued, as described below: There is an

---

[5] The Regulations do not expressly grant presiding officers the authority to enter orders or allow insurers to withdraw appeals. Instead, the Regulations contemplate that only the Commissioner can enter final orders disposing of these appeals. *See* 31 Pa.Code § 59.1(f) ("Upon completion of a hearing, if held, or upon receipt of the written comments, the Insurance Commissioner will issue an Order in conformance with his findings."); *see also id.* at § 59.7(e)(2) (explaining that, if a hearing is held, it will be recorded and that "[s]uch tape will be retained for a period of 90 days following issuance of the Insurance Commissioner's final order in the case").

[6] A representative from Phoenix would later explain that Phoenix purported to withdraw the appeal because it recognized that its notice of non-renewal was insufficient, as it made no reference to the fact that Skotnicki's dog had bitten the neighbor without provocation. N.T., 9/30/2014, at 39.

[7] In the interim, for reasons that do not impact this appeal, Phoenix did not extend Skotnicki's original policy; rather, it provided him with a new policy. The parties do not, however, appear to dispute that a continuation in coverage occurred.

animal or pet on the residence premises that has exhibited dangerous propensities by biting a person without provocation." N.T., 9/30/2014, Exhibit T-1. Skotnicki again appealed, requesting the Commissioner's review of the cancellation of his policy.

On July 14, 2014, Consumer Services issued an investigative report,[8] addressing Skotnicki's second appeal which challenged Phoenix's cancellation of his policy. In this report, Consumer Services stated that, following its investigation, it determined that Phoenix met the requirements of Act 205 and that Phoenix, therefore, could cancel the policy. Investigative Report, 7/14/2014, at 1. The report informed Skotnicki that he could request a formal administrative hearing. *Id.* Further, like the report issued in response to Skotnicki's appeal involving the non-renewal of his policy, this report contained a footer stating, "[B]e advised that this communication does not constitute an adjudication under the Administrative Agency Law." *Id.* at 2.

Skotnicki requested a formal administrative hearing, and the Commissioner again appointed Melinda Fisher Kaufman as the presiding officer. The hearing took place on September 30, 2014. At the hearing and in his subsequently submitted brief, Skotnicki presented several arguments in support of his position that Phoenix wrongfully cancelled his homeowners' policy. Relevant to the appeal currently before this Court, Skotnicki contended that the doctrine of collateral estoppel barred Phoenix from relitigating whether: (1) Phoenix violated Act 205; (2) the dog bite was provoked; and (3) an increase in hazard occurred. Skotnicki's Memorandum in Support of his Appeal for the Wrongful Termination of his Homeowners' Insurance Policy ("Skotnicki Memorandum"), 12/1/2014, at 9.

Skotnicki pointed out that the elements of collateral estoppel are:

---

[8] Interestingly, Consumer Services labeled this report as an "Investigative Report," not an "Investigative Report Order." *See*, *supra*, n.4.

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Skotnicki Memorandum at 9 (quoting *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 668 (Pa. 1975)). In arguing that all of the elements of collateral estoppel were met in this case, Skotnicki insisted that Phoenix had a full and fair opportunity to litigate all of the issues that it raised in this matter during the litigation of Skotnicki's first appeal from Phoenix's notice of non-renewal. *Id.* According to Skotnicki, Consumer Service's May 18, 2014 "Investigative Report Order" became a final adjudication and judgment on the merits when Presiding Officer Kaufman entered her order on June 19, 2014, which granted Phoenix's motion to withdraw the appeal of the non-renewal of his policy. *Id.* at 9-10.

Regarding the merits of Phoenix's decision to cancel Skotnicki's policy, the parties presented competing evidence at the hearing as to whether the dog bite was provoked. In support of his position that the dog bite was provoked, Skotnicki presented testimony from his wife, as well as his own testimony. In support of its position that the dog bite was unprovoked, Phoenix presented testimony from the claims adjuster who handled Skotnicki's dog-bite claim and from one of its senior product specialists.

On January 15, 2015, the Commissioner entered an "Adjudication and Order." *See* 31 Pa.Code § 59.7(f) ("Upon completion of a hearing, if held, or upon receipt of the written comments, the Insurance Commissioner will issue an Order in conformance with his findings."). Relevant to Skotnicki's assertion of the collateral estoppel doctrine, the Commissioner initially stated that, by regulation, the "formal record" in this setting is defined as:

> The filings and submittals in a matter or proceeding, a notice or agency order initiating the matter or proceeding, and if a hearing is held, the

following: the designation of the presiding officer, transcript of hearing, exhibits received in evidence, exhibits offered but not received in evidence, offers of proof, motions, stipulations, subpoenas, proofs of service, references to the agency head and determinations made by the agency head thereon, certifications to the agency head and anything else upon which action of the presiding officer or the agency head may be based; but not including a proposed testimony or exhibits not offered or received in evidence.

Adjudication and Order, 1/15/2015, at 10-11 (quoting 1 Pa.Code § 31.3). The Commissioner then emphasized that "the administrative hearing held in response to an appeal from an Investigative Report is a *de novo* proceeding."[9] *Id.* at 11.

In explaining its reasons for rejecting Skotnicki's collateral estoppel claim, the Commissioner concluded that Consumer Services' May 28, 2014 "Investigative Report Order" did not create a formal record, did not constitute a separate cause of action in which any issues were litigated, and did not result in a final judgment on the merits. *Id.* The Commissioner further suggested that, even though the April 22, 2014 notice of non-renewal and the June 18, 2014 notice of cancelation contain similar language, "the review of the first does not impact review of the latter." *Id.* Thus, in the Commissioner's view, Skotnicki failed to establish that collateral estoppel applied to his second appeal. *Id.* Regarding the merits of the appeal, it is sufficient to note that the Commissioner determined that the dog bite was unprovoked and, therefore, that Phoenix's cancellation of Skotnicki's homeowners' policy did not violate Act 205.

Skotnicki filed a petition for review in the Commonwealth Court. In that petition, Skotnicki, *inter alia*, renewed his claim regarding the doctrine of collateral estoppel. Skotnicki maintained that the Commissioner's holding that no formal record was created

---

[9] The Regulations make no mention of parties being able "to appeal" from an investigative report. Rather, according to the Regulations, after the parties receive the investigative report, they can submit comments to the Commissioner or request a formal administrative hearing. 31 Pa.Code § 59.7(c) & (d). The Commissioner ultimately must dispose of the matter by order. *Id.* at § 59.7(f).

in the first appeal from the notice of non-renewal is belied by the facts and law. Petition for Review, 2/11/2015, at 6. Skotnicki also took the position that, by withdrawing the appeal before a formal hearing occurred, Phoenix agreed to be bound by the terms and conditions of the May 28, 2014 "Investigative Report Order," which concluded that the dog bite incident was provoked and that Skotnicki's homeowners' policy should continue to provide coverage without a lapse (*i.e.*, Phoenix's non-renewal of the policy was disallowed). *Id.*

Skotnicki later filed a brief in support of his petition for review further developing his argument that the Commissioner erred by rejecting his claim regarding the doctrine of collateral estoppel. Skotnicki pointed out that the General Rules of Administrative Practice and Procedure ("GRAPP"), 1 Pa.Code §§ 31.1-35.251, defines "Adjudication" as an "order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of the parties to the proceeding in which the adjudication is made." Skotnicki's Amended Brief to the Commonwealth Court at 17 (quoting 1 Pa.Code § 31.3). Skotnicki contended that this definition bolsters his position that everything the parties filed in his first appeal from the notice of non-renewal created a record from which Phoenix could have fully exercised its rights; yet, according to Skotnicki, Phoenix chose to withdraw the appeal and allow the May 28, 2014 "Investigative Report Order" to stand "not by itself but by the June 19, 2014 Order issued by the Presiding Officer." *Id.* at 17.

In its responsive brief, the Department insisted that the essential elements of collateral estoppel were not met. First, the Department asserted that the initial proceeding involved the non-renewal of a policy and that the second proceeding concerned a different matter - cancellation of a policy. Department's Commonwealth Court Brief at 24-26. Second, the Department suggested that neither the May 28, 2014

"Investigative Report Order" nor Presiding Officer Kaufman's June 19, 2014 order constituted a final judgment on the merits. *Id.* at 26.

The Commonwealth Court affirmed the Commissioner's Adjudication and Order, rejecting Skotnicki's collateral estoppel claim and concluding that the Commissioner's decision on the merits was correct. *Skotnicki v. Ins. Dep't*, 146 A.3d 271 (Pa. Cmwlth. 2016). Regarding the issue of collateral estoppel, the court began its analysis by explaining that, pursuant to 31 Pa.Code § 59.7(e)(4),[10] the Department's formal administrative hearings are *de novo*. *Id.* at 283. The court then asserted that "nothing in the Department's Regulations or GRAPP makes the Commissioner bound solely by the May 28, 2014 Investigative Report Order." *Id.*

Next, the Commonwealth Court concluded that the doctrine of collateral estoppel does not apply in this case. After reiterating the elements of that doctrine, the court stated that it is undisputed that both reviews conducted by Consumer Services involved Phoenix and Skotnicki and that both parties had a full and fair opportunity to litigate Phoenix's termination of homeowners' coverage following the July 3, 2013 dog bite incident. However, according to the court, "the decisions differed in that one action progressed only through a first-level [Consumer Services'] review, while the other was subjected to a *de novo* hearing at which additional evidence was accepted." *Id.* (footnote omitted).

The Commonwealth Court further highlighted that, in the May 28, 2014 "Investigative Report Order," Consumer Services made clear that limited information informed its decision that the dog bite was provoked. *Id.* at 283-84. Thus, the court

---

[10] Subsection 59.7(e)(4) of the Regulations provides, "All relevant evidence of reasonable probative value will be admitted into the record of the proceeding and reasonable examination and cross-examination shall be permitted." 31 Pa.Code § 59.7(e)(4).

concluded, collateral estoppel did not bar the Commissioner from reaching a different result after a formal hearing, which included additional evidence and credibility determinations. *Id.* at 284.

In closing, the Commonwealth Court opined that, contrary to Skotnicki's contention that the May 28, 2014 "Investigative Report Order" was an adjudication, Consumer Services clearly stated therein: "[B]e advised that this communication does not constitute an adjudication under the Administrative Agency Law." *Id.* The court asserted, "Certainly, if the Commissioner was bound by [Consumer Services'] investigative reports, the second-level *de novo* review afforded by Section 59.7(e)(4) of the Department's Regulations would have little value. Accordingly, Skotnicki's argument cannot stand." *Id.*

Skotnicki subsequently filed a petition for allowance of appeal, which this Court granted, limited to the following issue: "Whether the Commonwealth Court erred in its conclusion that the Department is not bound by the May 28, 2014 Department Investigative Report Order directing [Phoenix] to continue [Skotnicki's] coverage without a lapse in coverage?" *Skotnicki v. Ins. Dep't*, 169 A.36 24 (Pa. 2017).

In his brief to this Court, Skotnicki contends that, in concluding that the Commissioner was not bound by Consumer Services' initial "Investigative Report Order," the Commonwealth Court overlooked that this report was part of the "formal record" in the appeal from the notice of non-renewal. Skotnicki's Brief at 9-10. Citing to 1 Pa.Code 31.3, Skotnicki submits that a formal administrative hearing is unnecessary to establish a formal record for purposes of the Commissioner's review of an insurer's decision not to renew a policy. *Id.* at 10. Skotnicki further suggests that the May 28, 2014 "Investigative Report Order" was an "adjudication," as that term is defined in GRAPP, regardless of the fact that the report contains language stating that it does not constitute an adjudication under the Administrative Agency Law. Skotnicki maintains

that, despite this language, investigative reports clearly impact parties' substantive rights and that parties are afforded due process to protect those rights. *Id.* at 10-11. In Skotnicki's view, because Phoenix was afforded due process leading up to the issuance of the "Investigative Report Order," Phoenix was bound by the findings of the report when it abandoned the initial appeal. *Id.* at 11.

Next, Skotnicki contends that the Commonwealth Court erred by holding that the doctrine of collateral estoppel does not apply in this case because the court's conclusion was based on the mistaken belief that Phoenix did not appeal the initial "Investigative Report Order," dated May 28, 2014, to the Commissioner. *Id.* at 11. According to Skotnicki, Phoenix's appeal, in seeking a formal hearing, of the "Investigative Report Order" made the report a final adjudication when Phoenix withdrew the appeal. *Id.* at 11-12. Skotnicki suggests that Phoenix "had a right to a formal administrative hearing and it took advantage of that right when it appealed the ['Investigative Report Order']." *Id.* at 12. Skotnicki asserts that, because Phoenix decided to forgo that hearing, the matter should have been decided on the basis of the parties' written comments and the investigative report. *Id.* at 12 (quoting 31 Pa.Code § 59.7(d) (stating that, if no formal hearing is held, then "the matter will be decided on the basis of the written comments and investigative report")).

Lastly, Skotnicki renews his argument that all of the traditional elements of the doctrine of collateral estoppel were met in this case. Specifically, Skotnicki maintains that: (1) the same issue of fact, *i.e.*, whether the dog bite was provoked, was litigated in both appeals; (2) the parties were identical in both appeals; (3) the initial appeal ended with a final judgment on the merits of the issue of fact; and (4) Phoenix had a full and fair opportunity to litigate the merits of that issue. *Id.* at 12-13. For these reasons, Skotnicki asks this Court to reverse the Commonwealth Court's order.

In its brief to this Court, the Department explains that Consumer Services' first-level review of an insured's appeal results in an investigative report. Department's Brief at 8-10. According to the Department, regardless of the outcome of this report, the Commissioner must ultimately decide the merits of the insured's appeal *de novo* when a hearing is requested and occurs. In other words, the Commissioner owes no deference to Consumer Services' findings and conclusions when a hearing takes place. *Id.* at 10-13. Indeed, the Department asserts that Consumer Services does not create a formal record during its review and that its reports specifically state that they do not constitute adjudications. *Id.* at 14.

The Department next avers that the Commonwealth Court correctly concluded that collateral estoppel does not apply to Consumer Services' investigative reports. *Id.* at 20-29. As to this case, the Department suggests that the issue decided in Skotnicki's first appeal was not identical to the issue decided in Skotnicki's second appeal because the appeals addressed different notices issued by Phoenix and these notices contained different language. *Id.* at 22-23. Further, the Department takes the position that neither the May 28, 2014 "Investigative Report Order" nor the June 19, 2014 order granting Phoenix's request to withdraw the initial appeal amount to a final judgment on the merits of whether the dog bite was provoked. In this regard, the Department is of the opinion that, because the Commissioner had not received any response from Phoenix at that point in the appeal process, the provocation issue had not actually been litigated. *Id.* at 23-29. In the Department's view, Phoenix "did not have a full and fair opportunity to litigate an issue before [Consumer Services], and therefore, the May 28, 2014 Investigative Report Order . . . is not binding on the Commissioner in any future *de novo* hearings." Department's Brief at 29. Accordingly, the Department requests that this Court affirm the order of the Commonwealth Court.

It is well-settled that the doctrine of collateral estoppel precludes relitigation of an issue settled in a previous action if:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005). "Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." *Id.* at 51.

To determine whether Consumer Services' investigative report triggered application of collateral estoppel, we begin and end our analysis by examining whether the report constitutes a final adjudication of the merits of an insured's appeal, when the Commissioner did not enter an order disposing of the appeal. Such an issue presents a question of law. Like all questions of law, our standard of review is *de novo*, and our scope of review is plenary. *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017). To the extent that the answer to this question can be found in the Regulations which implement Act 205, we observe that, generally speaking, the best indicator of the intent of regulations is the plain language thereof. *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 983 (Pa. 2016). Accordingly, we begin by examining the language of the Regulations.

Section 59.6 of the Regulations outlines the items that insurers must include in their notices of cancelation and non-renewal of homeowners' insurance policies. 31 Pa.Code § 59.6. The next section of the Regulations is entitled "Appeal procedure." *Id.* at § 59.7. Subsection 59.7(a) states that an insured may request in writing that the Commissioner review an insurer's act of cancelling or refusing to renew the insured's

policy.  *Id.* at § 59.7(a).  When the Commissioner receives such a request, the insured and the insurer receive notification that an investigation has begun and that they may be contacted to secure additional information.  *Id.* at § 59.7(b).

Importantly, Subsection 59.7(c) of the Regulations explains, "Upon completion of the investigation, a copy of the investigative report will be supplied to both the insured and the insurer.  Within ten days of receipt of the report either party may submit written comments for consideration by the Insurance Commissioner."  *Id.* at § 59.7(c).  At that point, the insurer or insured can request a formal administrative hearing.  If a party asks for a hearing, then a hearing is scheduled as soon as possible.  *Id.* at § 59.7(d).  However, if a hearing is not requested, then the matter will be decided by the Commissioner on the basis of the written comments and investigative report.  *Id.*

The next provision of the Regulations explains the procedures to be followed at a formal administrative hearing.  *Id.* at § 59.7(e).  For purposes of this appeal, it is sufficient to note that the procedures allow the parties to admit relevant evidence into the record and to engage in cross-examination.  *Id.* at § 59.7(e)(4).  The procedures also provide that GRAPP "may be used where conducive to speedy and fair proceedings."  *Id.* at § 59.7(e)(5).  Lastly, the Regulations expressly state, "Upon completion of a hearing, if held, or upon receipt of the written comments, the Insurance Commissioner will issue an Order in conformance with his findings."  *Id.* at 59.7(f).

This regulatory scheme grants to an insured a mechanism to appeal to the Commissioner when an insurer issues notice that it intends to not renew or cancel the insured's policy.  When an insured takes advantage of this appeal procedure, the Commissioner should initiate an investigation and, after completing that investigation, provide the parties with "the investigative report."  At that point, the parties are faced with a choice before the Commissioner issues an order deciding the fate of the appeal:

(1) submit comments for the Commissioner's consideration; or (2) request a formal administrative hearing.

If no formal hearing is requested, then the Commissioner will enter an order which decides the matter based upon the parties' written comments and the investigative report. If a hearing occurs, then the Commissioner will enter an order which decides that matter based upon the evidence submitted at the hearing. Thus, regardless of whether a hearing is held, it is not until the Commissioner enters an order that any issue implicated in the appeal is finally adjudicated on its merits.

Despite Consumer Services' apparent practice of labeling some of its investigative reports as orders, the Regulations indicate that "the investigative report" provided by the Commissioner, through Consumer Services, appears to be simply what it purports to be - a report explaining the outcome of an investigation. These investigative reports perhaps arguably fall within the Administrative Code's definition of "Adjudication" insomuch as the reports represent an agency's tentative "decision" or "determination" affecting the "obligations of the parties to the proceeding in which the adjudication is made." 1 Pa.Code § 31.3. However, even to the extent that an investigative report would fall within this definition of "adjudication," the Regulations make clear that, within this scheme, a final adjudication on the merits of an appeal does not occur until the Commissioner enters his or her final order in the matter.

As noted above, the doctrine of collateral estoppel precludes relitigation of an issue if, *inter alia*, "there was a final adjudication on the merits[.]" *Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005). Here, the issues in Skotnicki's initial appeal from the notice of non-renewal of his policy were tentatively decided in his favor in the "Investigative Report Order" issued by Consumer Services on May 28, 2014. However, the merits of those issues were not adjudicated to finality because the Commissioner never entered

an order as contemplated by the Regulations.[11]  Rather, Presiding Officer Kaufman permitted Phoenix to withdraw the appeal and entered an "order" discontinuing and closing the matter.

Neither the "Investigative Report Order" nor Presiding Officer Kaufman's "order" constituted a final adjudication of the merits of the issues presented in Skotnicki's initial appeal; accordingly, they did not operate to estop collaterally Phoenix from litigating any issue in the appeal from the notice of cancellation.  Thus, the Commonwealth Court reached the correct result in this matter.  Consequently, we affirm that court's order, which allowed to stand the Commissioner's determination that Phoenix did not violate Act 205 by cancelling Skotnicki's homeowners' insurance policy.

Chief Justice Saylor and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

---

[11] As mentioned above, in the "Investigative Report Order," Consumer Services explicitly informed Skotnicki that its tentative decision regarding his appeal did not constitute an adjudication.  N.T., 9/30/2014, Exhibit S2, at 2 ("[B]e advised that this communication does not constitute an adjudication under the Administrative Agency Law.").