**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | |
|---|---|
| BETTY BELL, AN ADULT INDIVIDUAL, AND PROPEL SCHOOLS, D/B/A PROPEL CHARTER SCHOOL - HOMESTEAD, PROPEL CHARTER SCHOOL - SUNRISE, D/B/A PROPEL BRADDOCK HILLS, PROPEL CHARTER SCHOOL - PITCAIRN, AND PROPEL CHARTER SCHOOL - HAZELWOOD,<br><br>        Appellees<br><br>        v.<br><br>WILKINSBURG SCHOOL DISTRICT,<br><br>        Appellant | No. 25 WAP 2021<br><br>Appeal from the Order of the Commonwealth Court entered April 19, 2021 at No. 1259 CD 2019, reversing the Order of the Court of Common Pleas of Allegheny County entered August 23, 2019 at No. GD 18-12950 and remanding.<br><br>ARGUED: March 10, 2022 |

**OPINION**

**JUSTICE TODD**                    **DECIDED: SEPTEMBER 29, 2022**

In this appeal, we consider whether Appellant, Wilkinsburg School District (the "District"), was required to obtain prior approval from the Department of Education (the "Department") before changing the mode of transportation for charter school students, from school buses to public transportation. After review of the governing statutes and administrative regulations promulgated by the State Board of Education (the "Board"), we conclude the District was not required to obtain such approval and, therefore, we reverse the Commonwealth Court decision and remand to that tribunal for further proceedings.

**I. Background**

The District is a public school district located in Wilkinsburg Borough, Allegheny County. Appellee, Propel Charter Schools ("Propel"), is a non-profit corporation that operates public charter schools within several municipalities outside of the District's boundaries – Pitcairn, Homestead, Braddock Hills, and Hazelwood – for which the District is required to provide transportation under the Public School Code. *See* 24 P.S. § 17-1726-A(a).[1]

Prior to the 2017-2018 school year, the District contracted with an independent bus company to provide transportation for all students residing in the District who attended its schools as well as for those students who attended one of Propel's charter schools located within ten miles of the District's boundaries.[2] Thus, students who attended these charter schools were transported to and from those schools on buses the District provided, pursuant to its bus contract. However, before the 2018-2019 school year, as part of ongoing efforts to safeguard its fiscal stability, the District engaged the services of a consultant from the Pennsylvania Association of School Business Officials to review its overall transportation program. Based on the consultant's review, the District determined that, if it discontinued providing school bus transportation for charter school students, and, instead, furnished those students with free passes to use public bus transportation provided by the Allegheny County Port Authority ("PAT"), its overall annual transportation costs would be reduced. This was because the District would be fully reimbursed by the Department for the cost of purchasing of bus passes from PAT;

---

[1] *See infra* note 4.

[2] These facts are taken from the District's proposed findings of fact, which the trial court expressly adopted. *See* Trial Court Opinion, 10/22/19, at 1. Because the trial court ruled in the District's favor after a non-jury trial and granted its request for declaratory relief, the District, as verdict winner, is entitled to the benefit of all favorable inferences from the factual evidence presented. *Rizzo v. Haines,* 555 A.2d 58, 61 (Pa. 1989); *Blue Anchor Overall Company v. Pennsylvania Lumbermen's Mutual Association*, 123 A.2d 413, 417 (Pa. 1956).

whereas, if it continued to provide bus transportation itself for the Propel students, the state subsidy for such costs was significantly more limited; as a result, the District would incur $136,836 in unreimbursed transportation expenses each fiscal year.

Consequently, the District decided that it would no longer provide Propel students with school bus transportation; and, in July 2018, the District informed both Propel and the parents of Propel students of this change. The District did not seek approval from the Department prior to implementing this new transportation plan; however, it had never previously sought approval from the Department for any of its previously-implemented transportation plans. Instead, the District's customary practice was to submit to the Department a form for transportation reimbursement at the end of each fiscal year – a "PDE 1049" form – and all of its prior requests for such reimbursement using this method had been granted by the Department.

As a result of the District's decision, Propel retained the services of a private bus company to provide transportation for all of its students in kindergarten through grade five; however, Propel did not provide such transportation for its sixth through twelfth grade students, who instead used the PAT bus passes provided by the District, or other means of transportation.

Two of Propel's students are the grandchildren of Appellee Betty Bell and reside with her in the District. Both attend Propel's charter school located in Pitcairn, and the oldest grandchild takes a PAT bus to and from that school. On October 12, 2018, Bell and Propel jointly filed a lawsuit against the District, seeking both declarative and injunctive relief.[3] The lawsuit sought a declaratory judgment that the District's furnishing of PAT bus passes to Propel's students did not constitute the provision of "free

---

[3] Because of the joint nature of their suit, for ease of discussion, we will refer to Bell and Propel Charter Schools, collectively, as Propel.

transportation" as Section 17-1726-A(a) of the Charter School Law ("CSL") required,[4] and, also, sought an injunction to prospectively prohibit the District from issuing such passes to Propel's students. Following a non-jury trial, the trial court ruled in the District's favor and dismissed Propel's complaint.[5]

---

[4] Specifically, Section 1726-A(a) provides, in relevant part, that:

> (a) Students who attend a charter school located in their school district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district. Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions. Districts providing transportation to a charter school outside the district and, for the 2007-2008 school year and each school year thereafter, districts providing transportation to a charter school within the district shall be eligible for payments under section 2509.3 for each public school student transported.

24 P.S. § 17-1726-A(a) (footnote omitted).

[5] The Department was not a party to the proceedings in the trial court, nor did it seek to intervene in those proceedings, and no representative of the Department testified therein. The Department has not sought to intervene herein, nor has it filed an *amicus* brief.

The trial court found that the District did not violate either the CSL or the Public School Code. The court reasoned that, although Section 17-1726-A(a) of the CSL requires students to be provided "free transportation," Section 13-1362[6] of the Public School Code expressly permits such transportation to be furnished by "common carriers" such as PAT. The trial court concluded that the "under the same conditions" language in Section 17-1726-A(a) was a requirement that the route be non-hazardous, but not that charter school students and school district students be transported in the same type of carrier.[7] Trial Court Opinion, 10/22/19, at 2. Given that the trial court could find no basis

---

[6] This section states:

> The free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1 ½ ) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. All private motor vehicles employed in transporting pupils for hire shall be adequately covered by public liability insurance in such amount as the board of school directors shall require.

*Id.* § 13-1362.

[7] Inasmuch as there was no evidence adduced to the contrary at the non-jury trial in this matter, the trial court adopted the District's proposed finding that there were no highway, road, or traffic conditions that constituted a hazard to the safety of any child who was walking between a PAT bus stop and a charter school. Trial Court Opinion, 10/22/19, at 1 (adopting District's Proposed Conclusions of Law III.D(5), 29).

in either the CSL or the Public School Code to mandate that identical means of transportation be provided to school district and charter school students, it refused to "impose such a requirement by judicial fiat." *Id.*

Propel appealed to the Commonwealth Court, arguing that the trial court committed legal error by failing to conclude that: (1) Section 1726-A(a) of the CSL required the District to provide the charter school students with the same form of transportation that the District provides to students attending its own schools; (2) the District's use of PAT buses to transport Propel students violated Section 23.2[8] and Section 23.4[9] of the Board's regulations governing pupil transportation; and (3) the

---

[8] This regulation provides:

> The means of pupil transportation to and from school, whether furnished by school conveyances, private conveyances or common carriers, and contracts and agreements relating thereto, shall be subject to approval by the Department.

22 Pa. Code § 23.2.

[9] This regulation specifies:

> The board of directors of a school district is responsible for all aspects of pupil transportation programs, including the following:
>
> (1) The selection of means of transportation in conformance with the law and regulations.
>
> (2) The selection and approval of appropriate vehicles for use in district service and eligible operators who qualify under the law and regulations.
>
> (3) The establishment of routes, schedules and loading zones which comply with laws and regulations, together with a provision of planned instruction for school bus drivers serving in the district.
>
> (4) The adoption of policies and establishment of criteria and procedures governing:
>
> > (i) The eligibility of resident pupils for free transportation services.

District's use of PAT buses to transport Propel students violated Section 13-1362 of the School Code because this resulted in students having to walk long distances over unsafe routes. *See* Propel Brief *filed in Bell v. Wilkinsburg School District*, No. 1259 C.D. 2019, (Pa. Cmwlth.).

The Commonwealth Court reversed in a unanimous, published *en banc* opinion. *Bell v. Wilkinsburg School District*, 252 A.3d 708 (Pa. Cmwlth. 2021). The court focused its analysis on the question of whether the District complied with Section 23.2 of the Board's regulations, as it viewed this to be "a threshold issue." *Id.* at 711. The District argued that, because Section 23.2 states only that the means of transportation chosen by a school district is "subject" to Department approval, it does not require the Department to approve a transportation plan prior to implementation, but, rather, the Department may approve a transportation plan retroactively, when it reimburses the district's transportation costs (or disapprove the plan by declining to reimburse such costs). The court rejected

---

> (ii) The discipline related to transportation for both public and nonpublic school pupils.
>
> (iii) Field trips, including the number of chaperons and whether the chaperons may be accompanied on field trips by their minor children.
>
> (5) The furnishing of rosters of pupils to be transported on each school bus run and trip.
>
> (6) The maintenance of a record of pupils transported to and from school, including determination of pupils' distances from home to pertinent school bus loading zones.
>
> (7) The negotiation and execution of contracts or agreements with contractors, drivers of district's vehicles and common carriers and submission of pertinent documents to the Department for approval of operation.
>
> (8) Assuring that vehicles used in transporting pupils have adequate public liability insurance coverage.

*Id.* § 23.4.

this argument, interpreting Section 23.2 as requiring "that, before a school district may implement a new or altered transportation plan . . . the school district must first obtain the Department's approval." *Id.* at 712. Consequently, it concluded that the trial court erred by failing to find that the District violated Section 23.2 by not seeking approval from the Department *before* changing its transportation plan for the Propel students. As a result, the court reversed the order of the trial court and remanded this case to the trial court for entry of judgment in favor of Propel.[10]

We granted allowance of appeal to consider whether the Commonwealth Court erred when it interpreted 22 Pa.Code § 23.2 to require school districts to obtain advance approval from the Department for pupil transportation plans and transportation services contracts before implementing them. *See Bell v. Wilkinsburg School District*, 266 A.3d 447 (Pa. 2021) (order).

## II. Arguments

The District argues that the Commonwealth Court erroneously interpreted 22 Pa. Code § 23.2 as requiring school districts to obtain Department approval prior to making any change to their transportation plans; rather, it contends the Department "regulates school district transportation via reimbursement." District Brief at 19. In support of this assertion, the District highlights the fact that the trial court specifically found that the Department does not require prior approval of any contracts or agreements related to the method of student transportation, and that, in fact, the Department lacks any established procedure for considering and approving such transportation-related agreements prior to their implementation. Indeed, according to the District, as established by the testimony

---

[10] Given its disposition, the Commonwealth Court did not reach two other issues raised by Propel: whether Section 1726-A(a) of the CSL required the District to provide the charter school students with the identical form of transportation that the District provided to students attending its own schools; and whether the District's use of PAT buses to transport Propel students violated Section 13-1362 of the Public School Code.

of the District's Director of Finance and Operations and its Transportation Coordinator, the Department has never required, nor has any other school district submitted, a transportation plan for the Department's approval prior to any school year; rather, the Department approves transportation plans through the reimbursement process. In other words, the District contends that the Department's reimbursement of a school district's transportation costs signifies that it has approved that district's transportation plan.

In this regard, the District explains that it submits a PDE 1049 form to the Department at the end of each fiscal year, and, thereafter, the Department reimburses the District for common carrier transportation. The District suggests that the PDE 1049 form recognizes fare-based common carrier services as a permitted form of transportation, and that it has always received full reimbursement — and, thus, approval — from the Department for the common carrier transportation it has provided to its students.

The District maintains that the Department's exercise of its approval authority through reimbursement is consistent with both Sections 23.2 and 23.4 of the Board's regulations, as Section 23.2 states only that the means of pupil transportation is "subject to approval by the Department," 22 Pa. Code § 23.2, not that it must be approved *in advance* by the Department, and Section 23.4 provides only that "pertinent documents," and not a specific transportation plan, must be submitted to the Department "for approval of operation," *id.* § 23.4.

Further, the District alleges that the Department's reimbursement procedure comports with Section 25-2541 of the Public School Code, which provides, in relevant part, that "[s]chool districts shall be paid by the Commonwealth for every school year on account of pupil transportation which, and the means and contracts providing for which, have been approved by the Department . . . ." 24 P.S. § 25-2541(a). The District notes

that, under this statutory provision, it will only be reimbursed if both the means of transportation and the contracts therefor have been approved by the Department.

The District also points out that Sections 25-2543 and 13-1357 of the School Code both contemplate that the Department may withhold reimbursement to a school district which does not comply with the transportation services provision of the School Code. *See id.* § 25-2543 ("The Department . . . may, for cause specified by it, withhold such reimbursement, in any given case, permanently, or until the school district has complied with the law or regulations . . . ."); *id.* § 13-1357 (The Secretary of Education "may withhold and declare forfeited any part, or all, of the State appropriation of any school district which refuses or neglects to comply with and to enforce the provisions of this article in the manner satisfactory to him."). Thus, the District contends that all of these applicable regulations and statutes confirm that the trial court properly found the District was not required to obtain prior approval of its transportation plan from the Department before implementing it, and that the Commonwealth Court was bound by the Department's interpretation of its own regulations.

Alternatively, the District asserts that, even if the Commonwealth Court was not bound by the Department's interpretation, the Commonwealth Court's interpretation was, itself, unreasonable. Specifically, the District notes that the CSL requires *only* the Philadelphia School District to submit its transportation policy for approval to the Department, before August 1 each year. *See id.* § 17-1726-A(d) ("A school district of the first class shall submit a copy of its current transportation policy to the department no later than August 1 of each year."). Given that the legislature elected not to impose this same requirement on other school districts, the District maintains that the Commonwealth Court should not have done so. In addition, the District suggests that, to the degree that previous Board regulations required submission of transportation plans to the Department

for prior approval, *see, e.g.,* 22 Pa. Code § 4-509 (1972-1975) (repealed) ("[t]he means of and contracts for all pupil transportation to and from the public schools shall be submitted to the Department of Education for approval of operation and for evaluation when pertinent and advisable") *published in* 2 Pa. Bull. 18, 730 (Apr. 22, 1972), or required school districts to submit the particular contracts between the district and the common carrier to the Department for approval, *id.* § 4-510 (1972-1975) (repealed), those regulations were repealed and replaced with entirely new governing regulations, such as Sections 23.2 and 23.4, which contain no such requirements. Thus, the District reasons that this evidenced an intent to link approval of plans or agreements with common carriers to the reimbursement process, and no longer require them to be submitted to the Department for prior approval. Accordingly, the District asks us to reverse the Commonwealth Court's decision and remand to that court to address the remaining issues which it did not reach.[11]

---

[11] The Pennsylvania School Board Association ("PSBA") filed an *amicus* brief in support of the District in which it details the history of Section 23.2 and other now-repealed regulations governing this same subject area. PSBA argues that the first iteration of Section 23.2 was published in the Pennsylvania Bulletin in 1972, as part of the now-repealed 22 Pa. Code § 4-120, and that regulation, along with the rest of Chapter 4 of the Board's regulation adopted in 1972, constituted an "elaborate scheme for submission of documents to the Department of Education for the Department's approval." *Amicus* Brief at 5. However, according to PSBA, this detailed scheme was eventually abandoned entirely by the Board, as part of its efforts to streamline the regulation of pupil transportation, based on the Department's experience with administering those regulations. Hence, it repealed Chapter 4 in 1975 and promulgated Section 23.2 as a stand-alone regulation.

Subsequently, PSBA contends, the Board further revised Chapter 23 in 1990 to remove regulations which it deemed "repetitious" of Section 23.2 and the reimbursement provisions of other sections. *Id.* at 9. PSBA concludes that, as a result, advance approval of transportation plans has not been required by the Department for over 30 years, and the Department "currently conducts no such approval process." *Id.* at 11. PSBA emphasizes that the effect of the Commonwealth Court decision is to undo what it characterizes as deregulation efforts by "judicially reinstat[ing] a regulatory expectation

In response, Propel argues that Section 23.2 clearly and unambiguously supports the Commonwealth Court's conclusion that school districts are required to obtain approval from the Department before changing or implementing a transportation plan. Propel contends that the phrase "subject to approval" in this regulation is "ubiquitous in administrative law" and means "depending on or contingent on later action by the agency." Propel Brief at 16. In this regard, Propel notes several instances where "subject to approval" has been interpreted in other regulations as similarly requiring advance approval from an agency. *Id.* (citing 58 Pa. Code § 69.25 (transfers of commercial fishing licenses); 25 Pa. Code § 77.126 (applications for noncoal mining permits); 12 C.F.R. § 5.33(g)(4)(i) (proposed mergers between an insured national bank and one of its affiliates)). In response to the District's claims that the Department does not have a system in place to review and approve transportation plans, Propel argues that such considerations are not relevant in interpreting the plain language of Section 23.2. Hence, in its view, a natural reading of the language "subject to approval" used in Section 23.2 required the District to submit any change in its transportation plan to the Department for approval prior to its implementation.

Alternatively, Propel asserts that, if this Court finds the language in Section 23.2 to be ambiguous, then principles of statutory construction nevertheless favor its proffered interpretation. First, Propel contends that Section 1726-A of the CSL must be read in *pari materia* with Section 23.2 to require advanced submission to, and approval by, the Department of all transportation plans. Specifically pointing to the language of Section 1726-A(b) which provides that, "[i]n the event that the Secretary of Education determines that a school district is not providing the required transportation to students to the charter

that the Department . . . long ago determined to be unnecessarily burdensome." *Id.* at 12.

school, the Department of Education shall pay directly to the charter school funds for costs incurred in the transportation of its students," Propel avers that the Secretary of Education cannot determine whether a school district is providing the required transportation "unless the Secretary fully understands what transportation the district intends to provide." Propel Brief at 18. Thus, in Propel's view, the language of Section 1726-A(b) demonstrates that the Department has an active supervisory role to ensure that school districts provide charter school students with the transportation to which they are entitled under the CSL, and it cannot properly exercise this role merely by acting on information it receives through invoices for reimbursement submitted by school districts.

Propel argues that 22 Pa.Code § 23.4(7) (providing that a school district's board of directors is responsible for "[t]he negotiation and execution of contracts or agreements with contractors, drivers of district's vehicles and common carriers and submission of pertinent documents to the Department for approval of operation") should be read *in pari materia* with Section 23.2, and also should be read in conjunction with the requirements of the CSL that give the Department an active supervisory role over transportation plans. Propel Brief at 21. In Propel's view "it would be strange" to require Department approval of all contracts for transportation, but not a change in the transportation plan itself; hence, it asserts that this also supports the Commonwealth Court's conclusion that a school district must submit transportation plans to the Department for approval when they "materially deviate from prior plans." *Id.*

Propel also contends that, from a policy standpoint, advance approval of transportation plans promotes the Commonwealth's interest in improving education for Pennsylvania's students, as "transportation is a critical part of quality education." *Id.* at 22. Propel argues that the history of Section 23.2 supports its interpretation, noting that a regulation adopted by the Board in 1972 contained language nearly identical to Section

23.2, and, in its view, the Board, through this regulation, intended to separate the approval of transportation plans from the reimbursement process. *See* 22 Pa. Code § 4-120 (1972-1975) (repealed) ("The means of pupil transportation, whether furnished by school conveyances, private conveyances or common carriers, and all contracts and agreements relating thereto shall be subject to approval by the Department of Education.") *published in* 2 Pa. Bull. 18, 728 (Apr. 22, 1972). Propel suggests that the similarity between the language in Section 23.2 and the 1972 regulation indicates that the Department still retains the authority to approve the means of transportation, and this remains a separate process from the Department's reimbursement approval process, which is governed by separate regulations it promulgated. *See* 22 Pa. Code §§ 23.31 to 23.40.

Lastly, Propel underscores what it views as the negative consequences of the District's interpretation, highlighting its contention that the District's plan to transport students to school via PAT buses places students at risk and leaves parents with "little choice but to opt away from choosing a charter school in favor of a district school, thereby defeating the entire purpose of the [CSL]." Propel Brief at 32. According to Propel, a school district has a role to play in the selection of transportation plans, but it does not have "unilateral, complete and unreviewable authority to implement any transportation plan it sees fit." *Id.* at 33. Thus, Propel maintains that ensuring changes to such plans receive the Department's approval prior to their implementation is necessary to protect children in all school districts from the exercise of unchecked power.[12]

---

[12] A coalition of charter schools filed an *amicus* brief in support of Propel. These *amici* echo Propel's assertion that the plain language of Section 23.2 unambiguously required the District to obtain advance approval of its transportation plans from the Department. *Amici* argue that, if we find Section 23.2 to be ambiguous, we should consider the consequences of the District's suggested interpretation. In their view, such consequences are "severe," and weigh in favor of adopting Propel's suggested

## III. Analysis

The issue presented in this appeal concerns the interpretation of an administrative regulation. This is a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Quigley v. Unemployment Compensation Board of Review*, 263 A.3d 574, 589 (Pa. 2021); *Popowsky v. Pennsylvania PUC*, 910 A.2d 38, 48 (Pa. 2006).

The regulation at the core of this case is Section 23.2 which, to reiterate, provides, in full:

> **§ 23.2. Approval of means of pupil transportation.**
>
> The means of pupil transportation to and from school, whether furnished by school conveyances, private conveyances or common carriers, and contracts and agreements relating thereto, shall be subject to approval by the Department.

---

interpretation. *Amici* Charter Schools' Brief at 11. In this regard, *amici* maintain that transporting students via PAT buses will have a detrimental effect on student safety, highlighting that school buses are statutorily required to be built to certain specifications to ensure child safety, while PAT buses are not; PAT buses are not bright yellow or equipped with a stop sign and flashing lights to alert motorists when a child is exiting the bus as school buses are, nor do PAT bus drivers have the crossing control arm to force children to cross the street at least five feet in front of the bus; and school bus drivers and other adults having contact with children on a school bus are required to undergo background checks, whereas no such requirement is in place for PAT bus drivers or passengers. In light of the foregoing, *amici* argue that children are safer on school buses, and the District's interpretation of Section 23.2 would allow it to endanger charter school students by imposing on them inferior transportation that has not received what it terms "real" review or approval by the Department. *Id.* at 17.

Finally, *amici* allege that the District's interpretation of Section 23.2 allows it to evade Department review and effectively receive a windfall: *amici* claim that, as a school district may exclude its transportation costs from the amount it pays to charter schools for each student, *see* 24 P.S. § 17-1725-A(a)(2), the District likely will not be paying for transportation for most charter school students because, *amici* submit, most parents will not allow their children to ride a PAT bus unattended.

22 Pa. Code § 23.2. This regulation was formally adopted by the Board in 1975 pursuant to its legislative rulemaking power. *See* 24 P.S. § 13-1361(e)(3) ("The State Board of Education shall adopt regulations . . . to govern the transportation of school pupils.").[13] As such, this rule "is valid and is as binding upon a court as a statute if it is (a) within the granted power [to the administrative agency], (b) issued pursuant to proper procedure, and (c) reasonable." *Crown Castle NG E. LLC v. Pennsylvania PUC*, 234 A.3d 665, 677 (Pa. 2020). There is no suggestion herein that this rule exceeded the power of the Board to promulgate it, that it was issued in contravention of administrative procedures, or that it is, broadly speaking, unreasonable. Thus, our task is solely to determine the meaning of the language of the rule which is contested by the parties, *i.e.*, the meaning of "subject to approval by the Department."

As our Court has observed, "generally speaking, the best indicator of the intent of regulations is the plain language thereof." *Skotnicki v. Insurance Department*, 175 A.3d 239, 247-48 (Pa. 2017). The common and widely accepted meaning of the term "approval" is "the act of approving . . . formal permission or sanction." Webster's Unabridged Dictionary 103 (2d ed. 2000). Notably, this definition does not specify a time frame in which the act of approval must occur. Consequently, the plain meaning of the phrase "subject to approval by the Department" does not, in and of itself, unambiguously resolve the question of *when* the Department is required to approve a change in a school

---

[13] As a general matter, under the Public School Code of 1948, 24 P.S. § 1-101 *et seq.*, the Board promulgates regulations to "establish standards governing the educational program of the Commonwealth," which includes the adoption of a master transportation plan, *id.* § 26-2603-B(i)(8). The Department of Education carries out those regulations, pursuant to its duty to administer all laws regarding the Public School Code. 71 P.S. § 352.

district's transportation plan – that is, whether it must be approved before the plan is implemented by the school district, as Propel contends, or whether it may be approved after the plan is implemented through a Departmental decision on whether it will reimburse the school district for its transportation costs, as the District maintains. Section 23.2, by its terms, is simply silent on this question, and both parties' suggested constructions are reasonable. Thus, given that there are multiple reasonable interpretations, it must be deemed ambiguous on this point. *See Freedom Medical Supply, Inc. v. State Farm Fire & Casualty Company*, 131 A.3d 977, 984 (Pa. 2016) (holding that whenever the governing language of a regulation is reasonably capable of alternative constructions it is ambiguous).

Whenever regulatory language is ambiguous, we may resolve the ambiguity by considering, *inter alia,* the following factors: the occasion and necessity for the regulation; the circumstances under which the regulation was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other regulations or statutes governing the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of the regulation. *Id.*; *see also* 1 Pa.C.S. § 1921. In particular, we find an examination of the former versions of this regulation, its administrative interpretation, and the consequences of a particular interpretation to be instructive.

First, an examination of the historical evolution of the language of Section 23.2 strongly suggests that it is not intended to require a district to obtain approval from the Department before changing a transportation plan. The present language of Section 23.2 first appeared, verbatim, as the second paragraph of a lengthier regulation that was part

of a comprehensive package of Board regulations adopted in 1972 to govern pupil transportation — Chapter 4, Pupil Transportation of the State Board of Education.[14]  *See* 22 Pa. Code § 4-120 (1972-1975) (repealed) ("The means of pupil transportation, whether furnished by school conveyances, private conveyances or common carriers, and all contracts and agreements relating thereto shall be subject to approval by the Department of Education.").  Notably, however, the final paragraph of this regulation specified that "[n]o reimbursement for the reimbursable costs of pupil transportation to and from school shall be paid unless the above provisions have been met *and applications for both approval and reimbursement have been presented on forms prescribed and furnished by the Department of Education.*"  *Id.* (emphasis added).  Thus, at its inception, the language currently constituting Section 23.2 was part of a broader regulatory framework which required a district seeking to implement a pupil transportation plan to not only apply for reimbursement for the plan, but also apply *separately* for Department approval of the plan. Consequently, at that time, there was a distinct application and reimbursement process for a pupil transportation plan mandated by the Board through its regulations, and, because of this "application for approval" requirement, it would have been reasonable to construe "approval" in the second paragraph of Section 4-120 as meaning *prior* approval from the Department before a district implemented a pupil transportation plan.

However, Section 4-120 was repealed in its entirety by the Board in 1975, leaving as the only surviving portion of that rule the present, unadorned language of Section 23.2, which retains none of the earlier prior approval language.  *See* 4 Pa. Bull. 50, 2422-24

---

[14]  *See generally* 2 Pa. Bull. 18, 728-33 (Apr. 22, 1972) (setting forth language of former Chapter 4).

(Nov. 23, 1974) (language of new rules supplanting Chapter 4); 5 Pa. Bull. 24, 1453 (June 7, 1973) (formally adopting new rules). Moreover, none of the other sections of Title 22 currently in force require any such applications for prior Department approval of transportation plans – including the sections governing the terms and conditions of a District's reimbursement for transportation costs in 22 Pa. Code §§ 23.31 to 23.40. Consequently, these regulatory amendments, which have eliminated any explicit requirement that a school district seek the Department's prior approval of its transportation plans, in our view, signify that the Board has repudiated any such requirement in Section 23.2.

Next, it appears the Department, which has been tasked with enforcement of Section 23.2, does not interpret it as imposing any such requirement, as the testimony adduced at trial in this matter, while not necessarily controlling, indicated that the Department does not require school districts such as the District to seek approval prior to implementing a transportation plan. The District's Director of Finance and Operations, Richard Liberto, who has been employed by various school districts for over 20 years, testified that, in his experience, the Department has never required that a school district submit its pupil transportation plan to the Department for approval prior to the school year. Instead, the only document required by the Department is the PDE 1049 form which comprises a district's request for reimbursement of travel costs incurred during the fiscal year pursuant to its already-implemented transportation plan. N.T. Trial, 4/11/19, at 166-67, 173. Liberto stressed that he was unaware of the Department *ever* requiring any other document to be submitted by a school district to obtain approval of a transportation plan. *Id.* at 176. In addition, the District's Transportation Coordinator, Diane Ionadi,

confirmed that the only approval ever received from the Department for its transportation plan was the reimbursement of the travel expenses it incurred thereunder. *Id.* at 135-36. Propel did not offer evidence disputing this testimony.

Additionally, we observe that Section 23.2 was promulgated in 1975 and the legislature, while aware of the Department's interpretation and approach to enforcing it, has not amended the Public School Code to alter it. Indeed, since the General Assembly enacted the CSL in 1997, the only express requirement for the prior approval of transportation plans it adopted for *any* school district was added in 2000, specifically for the Philadelphia School District. *See* 24 P.S. § 17-1726-A(d) ("A school district of the first class shall submit a copy of its current transportation policy to the department no later than August 1 of each year."). Notably, this requirement was not imposed on any of the Commonwealth's other 499 school districts, before or since.

Finally, interpreting Section 23.2 as not imposing a prior approval requirement is consistent with the overall constraints placed on the Department's authority over school transportation plans, as the Department is simply not empowered by any provision of the Public School Code or its regulations to administratively block a school district from implementing a transportation plan if it does not approve of the plan. Indeed, even with respect to the Philadelphia School District, the General Assembly has not empowered the Department to reject a transportation plan once it has been submitted. The Department's remedy, if it concludes a transportation plan does not comport with the requirements of the School Code or applicable regulations, is limited to withholding financial reimbursement from the school district for the costs it incurred in implementing the transportation plan. *See id.* § 25-2543 ("The Department of Education may, for cause

specified by it, withhold such reimbursement, in any given case, permanently, or until the school district has complied with the law or [its] regulations.").[15]

Thus, for all of these reasons, like the trial court, we adopt the District's interpretation of Section 23.2, and conclude that it was not obligated thereunder to submit its transportation plan for Propel's students to the Department for approval prior to implementing it. Therefore, we respectfully reverse the order of the Commonwealth Court, which reversed the trial court, and remand this case to the Commonwealth Court for consideration of the issues raised by Propel which the court did not address.[16]

Order reversed. Case remanded.

Chief Justice Baer and Justices Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion.

Justice Brobson did not participate in the consideration or decision of this matter.

---

[15] We do not minimize the important concerns Propel and its *amici* highlight, in support of their statutory argument, regarding the perceived safety advantages of transporting students by school bus over a common carrier. However, these are matters which, at their core, involve policy judgments, and, as such, were presumably carefully considered by the General Assembly when it permitted student transportation by common carrier under Section 13-1362 of the Public School Code, while imposing explicit student safety requirements which a school district must meet in order to use such a mode of transportation. *See supra* note 4. It is not this Court's role to supplant those policy determinations.

[16] *See supra* note 10.